## HAMPTON, Administrator, & Others v. PHIPPS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF SOUTH CAROLINA.

Decided April 16th, 1883.

*Equity—Mortgage—Subrogation—Surety.*

1. When one of two sureties gives a mortgage of his real estate to his co-surety to protect him against loss by reason of having become security for the principal, a creditor of the principal is not entitled to be subrogated in equity in place of the co-surety, and enjoy the benefit of the mortgage.

2. The distinction in principle between the rights of creditors of the principal debtor in the security where the debtor furnishes it to his sureties, and their rights where such security is furnished by one co-surety to the other, examined and explained.

3. When each of two co-sureties gives security to the other, to protect him against liability on account of the principal beyond a fixed sum, no right to resort to the security exists, until obligations on the part of the principal have been met by the surety beyond the sum named.

Bill in equity by a creditor to obtain the benefit of securities held by sureties of the principal debtor.

The appellee, who was complainant below, was the holder, and filed his bill in equity, on behalf of himself and the other holders of bonds, executed and delivered by Theodore D. Wagner and William L. Trenholm, to the amount of $710,000, and paid to creditors in settlement of the liabilities of two insolvent firms, in which they were two of the copartners. These bonds were dated January 1st, 1868. The payment of the principal and interest of each of these bonds was guaranteed, by writing indorsed thereon, by George A. Trenholm and James T. Welsman, who were sureties merely. These sureties entered into a written agreement each with the other, dated May 31, 1869, in which it was recited that, in becoming parties to said guaranty, they had agreed between themselves that the said George A. Trenholm should be liable for the sum of $400,000, and the said Jas. T. Welsman for the sum of $310,000, of the aggregate amount of the bonds, and no more, and that each would be respectively liable to the other for the full discharge of the said sum and proportion by them respectively undertaken, and

that each would save and keep harmless and indemnify the other from all claim, by. reason of the said guaranty, beyond the amount or proportion respectively assumed, as stated ; and it was thereby further agreed that, at any time when either of them should so require, each should, by mortgage of real estate, secure to the other more perfect indemnity, because of the said guaranty. Thereupon, and on the same date, each executed to the other a mortgage upon real estate of which they were respectively the owners, the condition of which was that the mortgagor should perform on his part the said agreement of that date. The guarantors, as well as the principal obligors, had become insolvent before the bill was filed.

It also appeared that, of the sum of $573,300 due on account of outstanding bonds, George A. Trenholm, one of the guarantors, had paid $108,454, leaving still due from his estate to make good the proportion assumed by him, $214,532; and that the proportion for which the estate of James T. Welsman, the other guarantor, was liable, was $250,314, of which nothing had been paid. The appellees claimed that the mortgages interchanged between the guarantors inured to their benefit as securities for the payment of the principal debt, and prayed for a foreclosure and sale for that purpose.

This was resisted by the appellants, one of whom, Hampton's administrator, as a judgment creditor of George A. Trenholm and James T. Welsman, claimed a lien on the mortgaged premises ; the others, executrixes of James Welsman, deceased, being subsequent mortgagees of the same property.

A decree passed in favor of the complainants, according to the prayer of the bill, from which appeal was taken.

*Mr. Theodore G. Barker* and *Mr. W. G. De Saussure* for appellants.

*Mr. James Lowndes* for appellee.—I. All securities given to a surety, whether in terms to pay the debt for which he is surety, or to indemnify and save him harmless from any harm or loss by reason of his suretyship, inure to the benefit of the creditor, who is entitled to apply the same in satisfaction of the

debt. *Maure* v. *Harrison*, 1 Eq. Cas. Ab. 93, is the leading case on this proposition. In this case it was decided that "a bond creditor shall in this court, have the benefit of all counter-bonds or collateral security given by the principal to the surety. This was followed in *Wright* v. *Morley*, 11 Ves. 12. In *Moses* v. *Murgatroyd*, 1 Johnson's Ch. 119, where an assignment had been made as a collateral security, by the maker of notes to secure his indorser, Chancellor Kent held that the holders of the notes were entitled to the benefit of this collateral security given by this principal debtor to his surety. So in *Phillips* v. *Thompson*, 2 Johnson's Ch. 418, it was held that a holder of a note is entitled to the benefit of any collateral security given by the maker to the indorser for his indemnity. *Hayes* v. *Ward*, 4 Johnson's Ch. 123. In *Haggarty* v. *Pitman*, 1 Paige, 298, the chancellor held that where a debtor makes an assignment to his surety for his indemnity, the creditor has an equitable claim upon the fund for the payment of his debt, and the surety has no right to divert it to any other object. *Heath* v. *Hand*, 1 Paige, 329 ; *Hopewell* v. *Bank of Cumberland*, 10 Leigh, 206. The case of *Curtis* v. *Tyler*, 9 Paige, 432, is very strong. The chancellor held that suit well brought, because where a surety, or a person standing in the situation of a surety, for the payment of a debt, receives a security for his indemnity and to discharge such indebtedness, the principal creditor is in equity entitled to the full benefit of that security. See also *Vail* v. *Foster*, 4 Comstock (N. Y.) 312; 1 Jones on Mortgages, § 387; *Hand* v. *Savannah*, &c., *Railroad Company*, 12 So. Ca. 314 ; *Young* v. *Montgomery*, &c., *Railroad Company*, 2 Woods, 606 ; *North Carolina Railroad Company* v. *Drew*, 3 Woods, 691.—II. The rule applies to all securities by whomsoever given to the surety to indemnify him ; and the security given by one co-surety to secure and save harmless his co-surety, comes within the rule, and the creditor is entitled to the benefit of the same. —III. The creditor has the right to proceed directly on the security. *Hopewell* v. *Cumberland Bank*, 10 Leigh, 206 ; *Curtis* v. *Tyler, supra* ; *Young* v. *Montgomery*, &c., *Railroad Company*, *supra* ; *Re Jaycox & Green*, 8 Nat. Bank. Reg. 241.

MR. JUSTICE MATTHEWS delivered the opinion of the court. After reciting the facts in the above language, he continued:

The ground on which the court below proceeded seems to have been that the mortgages given by the co-sureties, each to the other, were in equity securities for the payment of the principal debt, which inured to the benefit of the creditors upon the principle of subrogation.

The application of the principle of subrogation in favor of creditors and of sureties, has undoubtedly been frequent in the courts of equity in England and the United States, and is an ancient and familiar head of their jurisdiction.

It was distinctly stated, as to creditors, in the early case of *Maure* v. *Harrison*, 1 Eq. Ca. Abr. 93, where the whole report is as follows:

"A bond creditor shall, in this court, have the benefit of all counter-bonds or collateral security given by the principal to the surety; as if A owes B money, and he and C are bound for it, A gives C a mortgage or bond to indemnify him, B shall have the benefit of it to recover his debt."

And the converse of the rule was stated by Sir Wm. Grant, in *Wright* v. *Morley*, 11 Vesey, 12, where he said:

"I conceive that as the creditor is entitled to the benefit of all the securities the principal debtor has given to his surety, the surety has full as good an equity to the benefit of all the securities the principal gives to the creditor."

And it applies equally between sureties, so that securities placed by the principal in the hands of one, to operate as an indemnity by payment of the debt, shall inure to the benefit of all.

Many sufficient maxims of the law conspire to justify the rule. To avoid circuity and multiplicity of actions; to prevent the exercise of one's right from interfering with the rights of others; to treat that as done which ought to be done; to require that the burden shall be borne by him for whose advantage it has been assumed; and to secure equality among those

equally obliged and benefited, are perhaps not all the familiar adages which may legitimately be assigned in support of it. It is, in fact, a natural and necessary equity which flows from the relation of the parties, and though not the result of contract, is nevertheless the execution of their intentions. For, when a debtor, who has given personal guaranties for the performance of his obligation, has further secured it by a pledge in the hands of his creditor, or an indemnity in those of his surety, it is conformable to the presumed intent of all the parties to the arrangement, that the fund so appropriated shall be administered as a trust for all the purposes, which a payment of the debt will accomplish; and a court of equity accordingly will give to it this effect. All this, it is to be observed, as the rule verbally requires, presupposes that the fund specifically pledged and sought to be primarily applied, is the property of the debtor, primarily liable for the payment of the debt; and it is because it is so, that equity impresses upon it the trust, which requires that it shall be appropriated to the satisfaction of the creditor, the exoneration of the surety, and the discharge of the debtor. The implication is, that a pledge made expressly to one is in trust for another, because the relation between the parties is such that that construction of the transaction best effectuates the express purpose for which it was made.

It follows that the present case cannot be brought within either the terms or the reason of the rule; for, as the property, in respect to which the creditors assert a lien, was not the property of the principal debtor, and has never been expressly pledged to payment of the debt, so no equitable construction can convert it by implication into a security for the creditor.

It is urged that the logic of the rule would extend it so as to cover the case of all securities held by sureties for purposes of indemnity of whatsoever character and by whomsoever given. But this suggestion is founded on a misconception of the scope of the rule and the rational grounds on which it is established. Of course, if an express trust is created, no matter by whom, nor of what, for the payment of the debt, equity will enforce it, according to its terms, for the benefit of the creditor, as a *cestui que trust;* but the question concerns the creation of a

trust, by operation of law, in favor of a creditor, in a case where there was no duty owing to him, and no intention of bounty. A stranger might well choose to bestow upon a surety a benefit and a preference, from considerations purely personal, in order to make good to him exclusively any loss to which he might be subjected in consequence of his suretyship for another. In such a case, neither co-surety nor creditor could, upon any ground of privity in interest, claim to share in the benefit of such a benevolence.

There may be, indeed, cases in which it would not be inequitable for the debtor himself to make specific pledges of his own property, limited to the personal indemnity of a single surety, without benefit of participation or subrogation; as, when the liability of the surety was contingent upon conditions not common to his co-sureties, and which may never become absolute. *Hopewell* v. *Cumberland Bank*, 10 Leigh, 206.

We are referred by counsel to the case of *Curtis* v. *Tyler*, 9 Paige, 432, as an instance in which the rule has been extended to securities in the hands of a surety not derived from the principal debtor. But the fact in that case is otherwise. The question was as to the right of an assignee of a mortgage to the benefit of the guaranty of one Allen to make good any deficiency in the mortgaged property to pay the mortgage debt. This bond had been given to one Murray, a prior holder of the mortgage, who had assigned it to the complainant. The court say, in the opinion, p. 436:

"In the case under consideration, Murray had assigned the bond and mortgage given to him, and had guaranteed the payment thereof to the assignee. He, therefore, stood in the situation of a surety for the mortgagor, when the latter procured the bond of Allen as a collateral security, or as a guaranty of the payment of his original bond and mortgage. The present holders are, therefore, in equity entitled to the benefit of this collateral bond, in the same manner and to the same extent as if it had been given to Murray before he assigned his bond and mortgage, and had been expressly assigned by him to Beers, and by Beers to the complainants."

It thus distinctly appears that the bond of Allen, which was the collateral security in controversy, was procured by and derived from the original mortgagor, the principal debtor. We have been referred to no case which forms an exception to the rule as we have stated it.

But the claim of the complainants fails for another reason. The right of subrogation, on which they rest it, is merely a right to be substituted in place of each of the co-sureties in respect to the other, in order to enforce the mortgages given by them respectively according to their terms. But the conditions of those mortgages have not been broken, and the very fact, which is supposed to confer the right upon the creditor to interpose—the insolvency of the sureties—has rendered it impossible for either to fasten upon the other a breach of the condition of his mortgage. As neither can pay his own proportion of the liability they agreed to divide, neither can claim indemnity against the other for an over-payment. It is entirely clear, therefore, that neither of the sureties could be, under the circumstances as they appear, entitled, as mortgagee, to foreclose the mortgage against the other. The condition of each mortgage was, that the mortgagor would perform his part of the agreement and indemnify the mortgagee against the consequences of a failure to do so. Unless one of them had been compelled to pay, and had in fact paid, an excess beyond his agreed share of the debt, there could have been no breach of the conditions of the mortgage, and consequently no right to a foreclosure and sale of the mortgaged premises. And the amount which the mortgagor could be required to pay, as a condition of redeeming the mortgaged premises, in case of foreclosure, would be, not the amount which the mortgagee, as between himself and the common creditor, was bound to pay on account of the debt, but the amount which, as between himself and his co-surety, the mortgagor, he had paid beyond the proportion which, by the terms of the agreement between them, was the limit of his liability. The mortgages were not created for the security of the principal debt, but as security for a debt possibly to arise from one surety to the other. As to which of them has there been as yet any default? Plainly none as to

either. And yet the complainants assert the right to foreclose them both—a claim that is self-contradictory, for, by the very nature of the arrangement, it is impossible that there should be a default as to both. The fact that one mortgagor had failed to perform his part of the agreement could only be on the supposition that the other had not only fully performed it on his part, but had paid that excess against which his co-surety had agreed to indemnify him. There is, therefore, no right to the subrogation insisted on, because there is nothing to which it can apply.

It results, therefore, that the complainants were not entitled to participate in the benefit of the mortgages in question, nor to share in the proceeds of the sale of the mortgaged premises; but that the same should have been applied to the payment of the other judgment and mortgage liens upon the premises, in the order of their priority. The decree of May 29th, 1879, therefore, being the one from which the appeal was taken, is reversed, and the cause remanded with directions to take such further proceedings therein, not inconsistent with this opinion, as justice and equity require.

*Decree reversed.*