SWIFT & CO. v. KORTRECHT et al.

(Circuit Court of Appeals, Sixth Circuit. January 7, 1902.)

No. 927.

1. INJUNCTION—BOND—CONDITIONS—BREACH.

A judgment debtor, to obtain an injunction to restrain the collection of the judgment until he could recover a judgment in a pending suit against the creditor on a claim for unliquidated damages in excess of the judgment, as a set-off thereto, gave a bond conditioned, in the alternative, to pay the judgment or perform the decree in case the injunction should be dissolved, and pay such damages as might be sustained by the wrongful suing out of the writ. The debtor recovered in such action less than the amount of the judgment, and the amount so recovered was set off. Until such set-off the injunction continued in force. The creditor

did not show any damage. *Held*, that there was no breach of the conditions of the bond.

**2. SURETY—TRUST DEED—SUBROGATION—LIENS—PRIORITY.**

Where a borrower gives to his surety on the note to the lender a trust deed to indemnify such surety against loss, the lender is entitled to subrogation to the rights of such surety under such deed, and to a lien on the premises conveyed thereby superior to that of a subsequent judgment creditor.

**3. MERGER—DEED AND MORTGAGE.**

Where a borrower executes a trust deed for his surety on the note to the lender, to indemnify the surety against loss, and afterwards executes a deed absolute in form of the same premises to such surety to secure him for going on the grantor's bond, the lien of such trust deed is not merged in the title conveyed by such subsequent deed.

**4. SAME—SUBSEQUENT DEED—EFFECT.**

Where a debtor executed a trust deed to indemnify his surety, and after a subsequent judgment lien had attached to the land executed another deed to the same trustee to secure such surety in respect of several matters in which he had become surety, including the one covered by the trust deed, but making no mention of the trust deed, it was not thereby extinguished.

**5. PROPERTY OF SURETY—EXHAUSTING PRINCIPAL'S PROPERTY.**

Where a debtor and his wife join in a trust deed to secure the debt covering his land and also tracts belonging to his wife, a creditor having a subsequent judgment lien on the husband's property cannot require that the wife's property be sold under the trust deed before the husband's property is exhausted to pay the debt secured by such deed.

**6. HOMESTEAD RIGHT—WAIVER—DEED ABSOLUTE IN FORM.**

Where a husband and wife join in a deed absolute in form to a surety of the husband to secure such surety against loss, they do not thereby waive their right to claim such premises as a homestead, as against one claiming a lien on such premises as a judgment creditor of the husband.

**7. COSTS—APPORTIONMENT—DISCRETION.**

Where, in a proceeding to determine the priorities of certain liens, the appellants were successful only in part, a provision in the decree that they pay half the costs should not be disturbed.

Appeal from the Circuit Court of the United States for the Western District of Tennessee.

See 110 Fed. 328.

James H. Malone, for appellant.

Wassell Randolph, for appellees.

Before LURTON and SEVERENS, Circuit Judges, and THOMPSON, District Judge.

SEVERENS, Circuit Judge. The controversy presented by this appeal relates mainly to a question of priorities between certain liens upon 106 acres of land lying along the Loosa Hatchie river, in Shelby county, Tenn. After disposing of a single outlying question, we shall pass over a tangle of pleading and procedure in which the principal subject was involved in the circuit court, and gather up the threads of the case as it was finally presented for decision.

A. H. Kortrecht, one of the appellees, was the owner of the land in question. Mary P. Kortrecht, another of the appellees, was his wife. On August 16, 1894, Kortrecht borrowed $4,000 of the Memphis National Bank, evidenced by four promissory notes, and in order to secure the said notes, and "any renewal or renewals" there-

of, he and his wife executed to T. J. Latharn a trust deed, condi-tioned for the payment of said indebtedness, conveying certain lots of land in the city of Memphis, some of which belonged to Kortrecht, and some to his wife. A small part of this indebtedness was paid. The principal portion, however, was carried along in renewals, un-til on February 20, 1896, the unpaid indebtedness was represented by five notes, running to the bank, aggregating $3,250, signed by Kortrecht, and indorsed by T. J. Graham for Kortrecht's accommo-dation. On this last-mentioned day, Kortrecht, being the owner of the 106 acres of land first above mentioned, by deed of trust, his wife joining therein, conveyed the same to John M. Sears to secure the said Graham for his indorsement of the notes to the bank. On March 9, 1896, Swift & Co. recovered a judgment against Kortrecht in a state court for $2,957.93; and, in order to qualify Graham to become surety on an injunction bond which Kortrecht intended to use in proceedings to stay the collection of the judgment against him until he could establish a counterclaim which he had against Swift & Co., Kortrecht and wife, on the 30th of the same month, executed to Graham, for the nominal considera-tion of one dollar, a deed absolute in form and of the 106-acre tract. The judgment of Swift & Co. against Kortrecht was affirmed on er-ror by the supreme court of Tennessee, where a judgment was entered as of that court on May 23, 1896. On July 13, 1896, an abstract of this last-mentioned judgment was filed in the register's office of Shelby county under a provision of section 4712 of Shan-non's Code of Tennessee,—a provision which is part of a scheme of procedure for subjecting by bill in equity the equitable assets of a debtor to the payment of any judgment which shall have been rendered against him on the return of the execution unsatisfied. On July 7, 1896, Kortrecht filed his bill for an injunction to stay an execution from the original judgment against him, and on October 2, 1896, he filed a similar bill to stay an execution issued upon the judgment of the supreme court; the object of both bills being to restrain the collection of Swift & Co.'s demand until he could estab-lish his counterclaim, to the end that the latter might be offset. In each case an injunction bond was filed, Graham joining in them as surety upon an affidavit made by him that he was the owner of the 106 acres. Both these cases, together with a suit by Kortrecht against Swift & Co. to establish his counterclaim and to set it off against their judgment, were removed into the circuit court of the United States. In the latter court Kortrecht recovered a judgment for $1,100 against Swift & Co., which was decreed to be a set-off. On being deducted, it left the judgment of Swift & Co. standing at about $2,200. Thereupon Swift & Co. filed their bill to enforce their lien upon the land in question against the estate of Graham, the Memphis National Bank, and Kortrecht and wife, alleging also, among other things, that there had been a breach of the injunction bonds, that Kortrecht was insolvent, that the deed of March 30, 1896, of the 106 acres from Kortrecht and wife was merely to qualify him to be a surety upon the bonds, and that an equity had arisen in their favor by reason of that specific purpose. By the answer of the sev-

·eral· defendants,· the Memphis National Bank asserted·a·lien upon .the land by subrogation through the trust deed of February 20, ,1896, from Kortrecht and wife to Sears to secure Graham for his indorsement of the notes to the bank. Kortrecht and wife claimed a. homestead interest of $1,000 in the land, and the executrix of ¡Graham claimed a lien for moneys alleged to have been paid by ,Graham for Kortrecht. By its decree the circuit court adjudged that there was due to Swift & Co. the sum of $2,511.75, that there ·was· due to the Memphis National Bank the sum of $4,413.38, and ,to the executrix of Graham the sum of $431.54, and that for these several· sums the parties named had liens upon the 106 acres, and ·that the bank also had a valid lien for its debt upon the land con- :veyed· by the trust deed of August 16, 1894, above mentioned, some ·part of which belonged to Mrs. Kortrecht. The court further de- ,creed that Kortrecht and wife were entitled to a homestead interest ·of $1,000 in. the 106 acres. And, in respect to the order of priorities, ·the court decreed that they should stand in the following order: First, the claim of the bank; second, the homestead right of Kort- recht and wife; third, the claim of Swift & Co.; and, fourth, the claim of the executrix of Graham. The court further decreed that the bank should first exhaust the property of Kortrecht covered by its securities of August 16, 1894, and February 20, 1896, before ·going upon the land of Mrs. Kortrecht, also covered by that of Au- gust 16, 1894. This last provision of the decree was founded upon the ground that the pledge of her property was in the nature of suretyship for the husband's debt. There were also many other details of the decree more or less affected by the principal matters ·decreed as above, but not in such a way as that they need be now recited. Swift & Co. were ordered to pay one-half of the costs. The court had also at a previous stage of the litigation decreed that there had been no.breach of the injunction bonds given by Kortrecht with Graham as surety to stay the executions upon the judgments of Swift .& Co. as above mentioned, being of opinion, as we infer, that, as Kortrecht had succeeded in establishing his set-off by coun- terclaim to the extent of a material reduction of Swift & Co.'s de- mand, the injunction had been properly allowed, and the condition of the bonds had. therefore been fulfilled, notwithstanding in his injunction ·bill he had made a counterclaim much larger than Swift & Co.'s· judgment. Swift & Co. only have appealed. They ˙assign as errors—First, the decree of the court holding that there had been no breach of the injunction bonds; second, the refusal of the court to decree that Swift & Co. was entitled to priority in the proceeds of the 106 acres; third, the direction that the 106 acres should be sold in satisfaction of the claim of the bank, before selling the prop- .erty of Mrs. Kortrecht included in the deed of trust to Latharn of ,August 16, 1894; fourth, the allowance by the court of the home- ·stead claim of $1,000 of Kortrecht and wife; and, fifth, the order ,requiring Swift & Co. to pay one-half the costs.

· ᛫ 1. Did· the court err in holding that there had been no breach of ·the injunction bonds or either of them? The condition of the bonds was:·'  ᛫ ᛫  ᛫   ᛫

"Now, if the complainant pay the amount of the judgment at law in the bill, with interest, damages, and costs, or perform the decree of the court in case the injunction is dissolved, and also pay such damages as may be sustained by the wrongful suing out of the injunction, then this obligation to be void; otherwise, in full force and effect."

The condition was in the alternative, either to pay the judgment or to perform the decree of the court in case the injunction should be dissolved, and pay such damages as might be sustained by the wrongful suing out of the writ. The injunction was not dissolved, but was continued notwithstanding a motion to dissolve it. The injunction was in full force and effect when the decision was invoked and rendered. Nor was there any allegation or proof that Swift & Co. sustained any damage by reason of its issuance and the staying of their executions, the reliance of the obligees being placed upon the facts that the bonds had been given, and that a counterclaim had not been established to the extent of the judgment, whereby it was claimed they had been delayed in collecting so much of the judgment as was right[fully due them. The counterclaim consisted of unliquidated damages alleged to have arisen from an injury to the credit of Kortrecht by the malicious protestation of his note or notes by Swift & Co. He claimed damages to the extent of $5,000. We do not know that the claim to this extent was not made in good faith. He did recover but $1,100. The contention of the appellee must rest upon the assumption that Kortrecht should have tendered so much as he ought to have paid, and then enjoined the balance. Undoubtedly this is the rule where the amount which should be tendered is some fixed sum or susceptible of approximation, or represents some separable matter about which there is no controversy. But to apply the rule to such a case as this would require the plaintiff, at his peril, to minimize his claim to a sum which a jury, in its discretion, might thereafter award him. If the party should maliciously tie up a fund in the hands of his adversary, grossly exceeding the sum which he expects to recover, other considerations would apply.

2. Respecting the subject of the priority of liens, the principal controversy is over the question of the effect of the trust deed to Sears of the 106 acres made by Kortrecht and wife on February 20, 1896, to secure Graham and save him harmless from his liability to the bank. It is to be remembered that, although there is some controversy as to the time when Swift & Co.'s judgment became a lien,—a controversy which we need not decide,—it was, at all events, at a later date than February 20, 1896. The court below held that the bank was entitled to be subrogated to this security, and we think this conclusion was correct. The rule has long been settled that all securities given by the debtor for the payment of his debt inure to the benefit of the creditor. It is not necessary that they be given directly to the creditor or in express terms contain an agreement to pay the debt. If given to a surety to secure him, equity treats it as collateral to the debt. Some of the decided cases suggest a distinction which would exclude from the operation of the rule those cases where the language of the securing instrument indicates only a purpose to indemnify a surety, and does not indicate any agreement

to pay the principal debt. But it does not appear to us that there is any solid ground for this distinction. It rests upon the idea that the creditor's right can be no larger than that of the surety, which is measured by the terms of his security. But, when the debtor procures his surety to become liable for the debt, an implied obligation immediately falls upon the debtor to pay the debt himself. And this obligation is of so distinct and positive a character that, if the debtor fails to meet it, the surety may file a bill in equity to compel him to do so. Bisp. Eq. 338; Brandt, Sur. 192. The obligation is equally effective as if it were literally expressed. How else shall the debtor save his surety harmless than by satisfying the obligation? There is therefore no enlargement of the debtor's obligation by the subrogation of the creditor. The supreme court of Tennessee, in which state these transactions occurred, has held from an early date that a security such as was this trust deed to Sears of February 20. 1896, inures by the doctrine of subrogation to the benefit of the creditor. The leading case in that state is Breedlove v. Stump, 3 Yerg. 257. Other cases are Robertson v. Sublett, 6 Humph. 313; Kirkman v. Bank, 2 Cold. 407; Kinsey v. McDearmon, 5 Cold. 395; Saylors v. Saylors, 3 Heisk. 530. And decisions of the supreme court of the United States are in accord with that of the state upon the general principle. Hampton v. Phipps, 108 U. S. 260, 2 Sup. Ct. 622, 27 L. Ed. 719; Keller v. Ashford, 133 U. S. 622, 10 Sup. Ct. 494, 33 L. Ed. 667. In Hampton v. Phipps the subject was fully discussed by Mr. Justice Matthews in delivering the opinion of the court, and the maxims of equity supporting the doctrine collated.

But it is urged that the deed of March 30, 1896, from Kortrecht and wife to Graham, had the effect to merge the deed of trust to Sears of February 20th. The insistence is that "as the ownership of the mortgage debt and the title to the land became vested in one person, namely, T. J. Graham, the mortgage was thereby merged and extinguished." But this conclusion rests upon the erroneous assumption that Graham was the owner of the mortgage debt. The bank was at all times the owner of the debt.

Besides, it clearly appears that, though absolute in form, the deed of March 30th was really only upon a special trust to enable him to qualify as surety in the injunction bonds. It may be that Swift & Co. could have successfully maintained that, for the purpose of satisfying the liability upon those bonds, Kortrecht and wife were estopped to deny that Graham was the owner of the property, but, the liability itself not having been established, we find no ground on which an estoppel against showing the real fact can be supported. It is further urged that the deed of trust of February 20th was extinguished by a certain trust deed of the same land to Sears by Kortrecht and wife on December 3, 1896, to secure Graham in respect of several matters in which he had become surety for Kortrecht, the debt to the bank being one of them. But the deed of December 3d does not mention the trust deed of February 20th, nor is any purpose manifested to recall the former trust. Besides, the rights of the bank, which is not shown to have been a party to this latter transaction, had become fixed, and, as is held by the Tennessee cases above referred to, it was not in the power of the parties to

the later deed to subvert the former conveyance to a position subordinate to later liens acquired by other parties.

3. It is next contended that the court erred in decreeing that the 106 acres should be sold before Mrs. Kortrecht's property which had been included in the trust deed of August 16, 1894, to Latharn to secure her husband's debt to the bank, should be sold. But she was only a surety in respect of this deed of her own land. See Brandt, Sur. 22, and the cases cited in note. The question, therefore, is whether Swift & Co., who are creditors, are entitled in equity to require the bank to exhaust her property in order to exonerate the land on which they had acquired a judgment lien. We think not. It is axiomatic that sureties are favored in equity; that is to say, so far as they may be without impairing the obligations which they have undertaken. It cannot be doubted that, as between Kortrecht and his wife, the bank would be required to exhaust the property belonging to him before subjecting her property to sale. The creditors of the husband have no greater right than he. They cannot appropriate an equity which is due from him to another by acquiring a judgment lien upon his "equities." They gain only his position. It is not a case where the creditor is attacking a conveyance by his debtor for fraud, and the principles involved in such a proceeding are not applicable.

4. Another objection to the decree is that it allows to Kortrecht and wife their claim to a homestead right in the premises. Under the Tennessee statute in reference to homestead exemptions, it is not necessary that the premises in which the exemption is provided for shall be actually occupied at the time for the purposes of such a use. It is contended that by their deed to Graham of March 30, 1896, they devested themselves of all title to the property, and that they cannot now, especially against Swift & Co., claim a homestead in the property, the title to which was by their own act vested in Graham, the result of which was, it is said, to make him appear in the court and to Swift & Co. to be the owner of the premises. But it is admitted, and Swift & Co. insist, that the deed, although absolute in form, was in reality in the nature of a security, and designed to effect a special purpose only. Upon that purpose being satisfied, the land reverted to the grantor, and the situation was as if the deed had not been made. The cases of Bentley v. Jordan, 3 Lea, 353; Fauver v. Fleenor, 13 Lea, 622; White v. Fulghum, 87 Tenn. 281, 10 S. W. 501; Gaylon v. Gilmore, 93 Tenn. 671, 28 S. W. 301,— clearly show that in such circumstances Kortrecht and wife are entitled under the statute of the state to claim a homestead interest in the land, or, if the land must be sold, in the proceeds of the sale.

5. The provision in the decree requiring Swift & Co. to pay one-half the costs is also complained of. The matter of costs rests largely in the discretion of the chancellor, and his determination will not be reversed unless it is manifestly arbitrary and unreasonable. In the present instance we see no reason for thinking that the discretion of the court below was improvidently exercised.

These conclusions control the determination of all the questions presented by the appeal of Swift & Co., who are the only appellants. The decree of the circuit court must be affirmed, with costs.