UNITED STATES, to Use of COLONIAL BRICK CORPORATION et al. v. FEDERAL SURETY CO. et al.

No. 3662.

Circuit Court of Appeals, Fourth Circuit.
Oct. 2, 1934.

Leonard J. Ganse, of Washington, D. C. (Sykes, Nyburg, Goldman & Walter, of Baltimore, Md., on the brief), for appellants.

William R. Semans and Roszel C. Thomsen, both of Baltimore, Md. (William D. Macmillan, of Baltimore, Md., Edmond M. Cook, of Davenport, Iowa, and Walter L. Clark, of Baltimore, Md., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

This case arises in connection with the companion case at law, 72 F.(2d) 961, in which we have this day sustained an order of the District Court wherein a motion to quash the writ of summons against the Federal Surety Company, hereinafter called the Surety Company was granted. This appeal is taken from orders of the District Court in equity sustaining motions of London & Lancashire Indemnity Company of America and of Guardian Casualty Company to dismiss the bill of complaint, and from two other orders of the District Court sustaining motions of E. W. Clark, receiver of Federal Surety Com-

pany, to quash the writs of subpœna issued against the Surety Company and E. W. Clark, receiver, respectively, and to vacate and set aside the returns thereon. The motions of London & Lancashire Indemnity Company of America and of Guardian Casualty Company questioned the sufficiency of the bill of complaint on the ground that it showed on its face that neither the complainants nor the said defendants were residents of the state of Maryland, and therefore the court had no jurisdiction over the defendants; and also on the ground that the facts alleged were insufficient to constitute a cause of action against them. The motions of E. W. Clark, receiver, were similar in character to those filed by him in the companion case, and were based on the fact that by a decree of the district court of the state of Iowa, in and for Scott county, the Surety Company had been formally dissolved and the said defendant had been appointed a permanent receiver to wind up the business and distribute the assets.

We consider first the motion to dismiss the bill of complaint wherein substantially the following facts are alleged: On September 11, 1930, the National Contracting Corporation entered into a contract with the United States for the construction of officers' quarters at Fort George G. Meade, Md., and on September 24, 1930, in compliance with the Hurd Act, 40 USCA § 270, the contractor, as principal, and the Surety Company, as surety, executed a bond to the United States in the sum of $94,937, which contained the usual conditions for the faithful performance of the contract and for the prompt payment to all persons supplying the principal with labor and materials in the prosecution of the work covered by the contract. In the following month, London & Lancashire Indemnity Company of America and Guardian Casualty Company, as reinsurers, executed separate reinsurance agreements in the standard form with the Surety Company. In each of these agreements it was provided in substance that the reinsurer, in consideration of the premium stated therein, reinsured the Surety Company under the above-described bond, against loss thereunder and against costs, expenses, and interest, subject to the following conditions and provisions: That the premium payable in each case to the reinsured should be that proportion of the total premium which the amount of the liability of the reinsurer bore to the total liability under the bond, less the commission; and that the validity of the agreement should not be affected by the failure of the Surety Com-

pany to pay the reinsurer either the initial or any subsequent premium due from the former to the latter. The total liability of the reinsurer was limited to one-third of the total liability under the bond, and its proportionate share of the costs, expenses, and interest. The Surety Company was to take charge of all matters arising under the bond in connection with claims, to settle or compromise any claims, and defend, settle, or compromise any suits, and take any other action not involving the extension of credit or the advancing of money in connection with any claim under the bond as it might deem advisable; and such determination, settlement, or compromise was to be final, conclusive, and binding upon the reinsurer. The reinsurer was to be entitled to share with the Surety Company any collateral security or indemnity held, or right of action possessed by the Surety Company in connection with the bond, or any salvage or recovery made on account of any loss. It was also provided that if under any law the agreement was required to be in such a form as to enable the obligee or beneficiary of the bond to maintain an action thereon against the Surety Company jointly with the reinsurer, and upon recovering judgment against the Surety Company, to have recovery against the reinsurer for payment to the extent to which it might be liable under the agreement, then the agreement should be deemed to be a compliance with such law. The liability of the reinsurer became effective as of the date of the execution of the bond and coextensive in time with the liability of the Surety Company. The reinsurers in fact received proportionate parts of the premium paid by the contractor for the bond.

After execution of the contract, bond, and reinsurance agreements, material and labor were furnished to the contractor in the construction of the work by the use-plaintiffs, as subcontractors for whose benefit the pending suit was filed. The contractor defaulted in payments due certain of the subcontractors, who thereupon notified the contractor and its surety that they would not further perform their subcontracts; and thereupon, the Surety Company agreed that if they would continue performance, it would pay the amounts in arrears, and that all material and labor thereafter supplied should be furnished directly to it and charged to its account. The arrearages were paid in compliance with this undertaking, and the use-plaintiffs between January 20, 1931, and August 31, 1931, furnished additional material and labor, in the aggregate sum of $20,361.20, which were used in the construction of the work but not paid for either by the contractor or the surety. The contractor failed to complete the work and was declared by the United States to be in default on August 31, 1931. Demand was made upon the Surety Company to complete, but it likewise failed, and on September 17, 1931, was declared in default. The work was completed, on or about February 4, 1932, by an outside contractor after the United States had advertised for bids.

Both the contractor and the surety company had become hopelessly insolvent and had ceased to do business when they defaulted on the work at Fort Meade, and there were numerous unpaid claims for material and labor furnished under the contract. On September 25, 1931, the district court of Scott county, Iowa, entered a decree in certain proceedings against the Surety Company, by which it was dissolved, and E. W. Clark was appointed permanent receiver. Thereafter, on November 10, 1931, Raphael Walter was appointed an ancillary receiver by the circuit court of Baltimore City. It also appears from exhibits filed with the motions of the receiver to quash the writs of summons against him and the Surety Company that on December 22, 1931, the Iowa court issued a supplemental decree in which it abated all actions against the Surety Company and all debts due by it, declaring that all judgments or liens against the Surety Company after September 25, 1931, were nullities, and ordered the receiver to refrain from defending any action against the company and its creditors, but to appear solely for the purpose of abating the same.

Prior to the entry of these decrees, the Colonial Brick Corporation, one of the use-plaintiffs, brought an action against the Surety Company on an open account in the Supreme Court of the District of Columbia, to which the Surety Company appeared, and subsequent to the decrees, to wit, on November 15, 1932, judgment was entered for the plaintiff therein for the amount of its claim with interest and costs.

Receivership proceedings against the contractor were brought in Virginia and District of Columbia courts, and the sum of $7,759.81 due the contractor, which remained in the hands of the United States, was paid to the receivers and distributed pro rata amongst the materialmen and laborers, leaving still due and owing to the use-plaintiffs in this action the aggregate sum of $18,042.30.

On October 12, 1932, the companion action hereinbefore mentioned was brought in

the District Court of the United States for the District of Maryland under the Hurd Act (40 USCA § 270) by the United States to the use of the Colonial Brick Corporation and other creditors who might intervene. On January 28, 1933, the bill of complaint in the instant case in equity was filed, setting up the aforegoing facts; and further alleging that since the contractor and surety are both insolvent, the use-plaintiffs will be unable to obtain payment of any judgment that they might obtain in the action at law, and will be limited to redress against the reinsurers to the extent of their proportionate liability under their agreement; that the reinsurers received proportionate parts of the premium on the bond, and maintained a representative on the public work during its progress; that the use-plaintiffs and other supply men are preferred creditors, having special legal and equitable rights in any sums or funds arising from the reinsurance; and that by reason of all the said circumstances, an action accrued to the United States for the use and benefit of the use-plaintiff and other materialmen and laborers under the Hurd Act against the Surety Company, its receiver and the reinsurers; and that the suit in equity may be maintained "ancillary to and in aid of said action at law."

The grounds upon which the use-plaintiffs rest their right to recovery against the reinsurers are twofold: (1) That the reinsurers, through the Surety Company, as their agent, entered into contractual relations with the use-plaintiffs when it undertook, after the contractor's default, to pay for the labor and material subsequently supplied; and (2) that since the contracts of reinsurance were made in respect to a bond given by the contractor and surety company in conformity with the Hurd Act, they must be construed as contracts for the benefit of third persons giving rise to a direct right of action by the supply men against the reinsurers.

■■■ The latter ground may be considered in the light of the established rule that an insured may not bring an action at law against a reinsurer of the risk under a strict contract of reinsurance because there is no privity of contract between them. Vial v. Norwich Union Fire Ins. Soc., 257 Ill. 355, 100 N. E. 929, 930, 44 L. R. A. (N. S.) 317, Ann. Cas. 1914A, 1141; Globe Nat. Fire Ins. Co. v. American Bonding & Cas. Co., 198 Iowa, 1072, 195 N. W. 728, 200 N. W. 737, 35 A. L. R. 1341 and note; Moseley v. Liverpool & London & Globe Ins. Co., 104 Miss. 326, 61 So. 428; Southwestern Surety Ins. Co. v. Stein, etc. Co. (Tex. Civ. App.) 180 S. W. 1165; Clark County v. Bergstresser, 57 S. D. 424, 233 N. W. 276. And see American Bonding Co. v. American Surety Co., 127 Va. 209, 103 S. E. 599, 602; Ruohs v. Traders' Fire Ins. Co., 111 Tenn. 405, 78 S. W. 85, 88, 102 Am. St. Rep. 790; Barnes v. Hekla Fire Ins. Co., 56 Minn. 38, 57 N. W. 314, 45 Am. St. Rep. 438; Morris & Co. v. Insurance Co., 279 U. S. 405, 408, 49 S. Ct. 360, 73 L. Ed. 762. Such reinsurance, in the ordinary case, is taken out for the benefit of the reinsured in order to indemnify it from loss, and it has become a settled principle that upon the insolvency of the insurer, the proceeds of the reinsurance are assets to be distributed generally amongst its creditors and the insured has no special equitable claim against them. Herckenrath v. American Mutual Ins. Co., 3 Barb. Ch. (N. Y.) 63; Appeal of Goodrich, 109 Pa. 523, 2 A. 209; David Bradley & Co. v. Brown, 78 Neb. 836, 112 N. W. 331, 13 L. R. A. (N. S.) 152, 126 Am. St. Rep. 647; Morrow v. Burlington Basket Co. (Tex. Civ. App.) 66 S.W.(2d) 746.*

■■ The appellant does not dispute this rule, but points out that under the Hurd Act, privity of contract between materialmen, on the one side, and the contractor or surety, on the other, is wholly immaterial, Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206, and it contends that the reinsurers became participants with the surety company in a joint enterprise when they entered into the contract of reinsurance in respect to the contractor's bond, since thereby they received proportionate amounts

* The only decision to the contrary, Hunt v. New Hampshire Fire Underwriters' Ass'n, 68 N. H. 305, 38 A. 145, 38 L. R. A. 514, 73 Am. St. Rep. 602, proceeds upon the theory that reinsurance is analogous to collateral deposited by a principal debtor with his surety for the surety's protection, and like such collateral, should be subject to the direct attack of the creditor regardless of the solvency of the principal debtor or his surety. This decision has not met with favor for it ignores the distinguishing fact in the case of the deposit of collateral, that the debtor has specially pledged his own property with the surety, and it is the presumed intention of the parties to the arrangement that the fund will be administered as a trust for the purpose of the payment of the debt; and so a court of equity will give it this effect. Hampton v. Phipps, 108 U. S. 260, 264, 2 S. Ct. 622, 27 L. Ed. 719; Keller v. Ashford, 133 U. S. 610, 622, 10 S. Ct. 494, 33 L. Ed. 667.

of the premium, and became entitled to share in any collateral security or in any salvage or recovery, and assumed proportionate shares of the liability. The reinsurance agreements expressly provided that if under any law the agreement should be required to be in such form as to enable the obligee of the bond to maintain an action against the surety company jointly with the reinsured, and to have recovery against the reinsurer to the extent of its liability, then the agreement should be deemed to be in compliance with such law. It is urged that when this provision of the contract is considered in connection with the provisions of the Hurd Act, requiring the giving of a bond for the protection of third persons furnishing material or labor to the prosecution of the work, it is seen that the contract is one for the benefit of third persons and contemplates direct action by either the obligee or beneficiary of the bond. We are referred to such cases as Globe Nat. Fire Ins. Co. v. American Bonding & Casualty Co., 198 Iowa, 1072, 195 N. W. 728, 200 N. W. 737, 35 A. L. R. 1341; Meyer v. National Surety Co., 90 N. J. Law, 126, 100 A. 164; Southern States Fire Ins. Co. v. Hand-Jordan Co., 112 Miss. 565, 73 So. 578.

If we were to adopt this conclusion, we should, in effect, repudiate the settled rules of the law of reinsurance to which reference has been made. We do not have here, as in the cases last cited, an agreement of the reinsuring companies to be directly liable to the original insured. Such contracts a reinsurer is competent to make; but they differ materially from those of the standard form wherein, as in this case, the promise is that the reinsurer insures the surety or reinsured under a specified contract against loss thereunder. To construe this language as a direct obligation to the insured would be a distortion of its obvious meaning. Nor does it alter the situation that in the present case the risk insured arose under a bond given in conformity with the Hurd Act (40 USCA § 270). That act does not fall within the description in the reinsurance agreement of a law which requires the agreement to be in such form as to enable the obligee or beneficiary of the bond to maintain a joint action against the surety company and the reinsurer. It merely requires that the contractor upon a public work shall execute the usual penal bond with sufficient sureties, with the additional obligation that he will promptly make payment to persons supplying him with labor and material in the prosecution of the work, and gives to the supply men, if they have not been paid,

the right to intervene and be made a party to an action instituted by the United States "on the bond of the contractor," and to have their rights adjudicated in such action; or if the United States fails to bring suit within six months, then the unpaid supply men may bring suit in the name of the United States for their own benefit against "such contractor and his surety." There is no requirement of reinsurance and no stipulation as to the rights of the parties when the surety, acting on its own account, reinsures the risk; and it may be assumed, in the absence of statutory provision, that the rights of the parties are to be governed by the general rules of law when reinsurance is actually obtained. It is true that there are many authorities which hold that privity of contract between the material-men and the contractor or surety is not essential, but these decisions have no reference to the rights of materialmen against reinsurers.

Nor do the allegations of the bill appear to be sufficient to support the theory that the reinsurers entered into contractual relations with the supply men when the surety agreed to pay them not only the balance due for past performance, but also for all future deliveries. It is true that the reinsurance agreements authorized the surety company to act for the reinsurers in all matters arising in connection with any claim, and to take any action in regard thereto which it might deem advisable, its decision or settlement to be final and conclusive and unconditionally binding upon the reinsurers. These provisions of the reinsurance agreements seem to have been designed with relation to the parties thereto, so that the liability of the reinsurers to the surety company would not be diminished or adversely affected by any arrangement in the nature of a settlement or compromise which the Surety Company might make with the claimants; and it does not appear from the facts alleged that the reinsuring companies became parties to any contract between the surety company and the materialmen for the completion of the work. There is an allegation that the reinsurers maintained a representative on the work during its progress, but this statement is too vague as to the purpose of the representative or the time when he was placed on the work to permit any inference to be drawn that he was employed in connection with a contract for the completion of the work.

However, if it should be supposed that through these circumstances some direct liability on the part of the reinsurers to the sup-

ply men arose, it would not enable the use-plaintiffs to maintain the instant action in the District of Maryland. The bill on its face shows that neither the complainants nor the reinsurers are citizens or residents of the state of Maryland. Both reinsurers were served with process in the District of New York and both were incorporated under the laws of that state. It is provided by section 51a of the Judicial Code, 28 USCA § 112 (a), that no civil suit shall be brought in any District Court against any person by original process in any other district than that whereof he is an inhabitant or resident, and it is well settled that a corporation is an inhabitant or resident only of the state of its incorporation. Galveston, H. & S. A. Co. v. Gonzales, 151 U. S. 496, 14 S. Ct. 401, 38 L. Ed. 248; Rose on Federal Procedure, § 301. It is true that suits brought under the Hurd Act (40 USCA § 270) must be filed in the name of the United States in the District Court of the United States in the District in which the contract was to be performed and executed; but, as we have seen, no claim against the reinsurers can arise under that act. It may be noted in passing that the pending suit is in equity, and that it has been authoritatively decided that a suit brought under the Hurd Act is a suit at law and not a suit in equity. Illinois Surety Co. v. United States, 240 U. S. 214, 223, 36 S. Ct. 321, 60 L. Ed. 609. Whether, in view of these decisions, it is proper under any circumstances to bring a suit in equity ancillary to an action at law under the act, it is not necessary in this case to decide.

The motions to dismiss the suit as to the London & Lancashire Indemnity Company of America and the Guardian Casualty Company were therefore properly granted by the District Court. Its action in granting the motion of the statutory receiver to quash the writs of subpoena against the Surety Company and the receiver, and to vacate and set aside the return of summons were likewise properly taken. No suit is maintainable against the dissolved corporation for the reasons given in our decision in the companion suit at law, No. 3612, and as that case was retained by the court so far as it affects the statutory receiver, the use-plaintiffs may secure therein any relief to which they were entitled. The bill of complaint does not make out a case in equity against the receiver, and the motion to quash the writ may, for the present purposes, be considered as a motion to dismiss the bill of complaint.

The decree of the District Court is affirmed.