ISRAEL EPSTEIN, respondent,

*v.*

JOSEPH MUNDWEILER et al., appellants.

[Decided January 19th, 1925.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Foster, who delivered the following oral opinion:

"This is a suit for the specific performance of a written contract relating to the sale of real estate, the title to which was to have passed on the 1st of August, 1923.

"The complainant is the vendee in the contract, and the vendors are the defendants, husband and wife.

"The contract contains a provision to the effect that if the title to the premises be found defective, vendors agree to repay the $550 deposit made by the purchaser, together with $150 to cover the cost of his expenses and disbursements in investigating the title.

"It seems that, on the examination, the title to the premises was found to be defective, with the result that the Fidelity Trust Company refused to issue a policy thereon. The uncontradicted testimony on the part of the complainant is that he has been ready, willing and able to take the title, notwithstanding these defects, at any and all times; that notwithstanding his knowledge of the defects, he approached the defendant and asked him to hurry the conveyance from the 1st of August to the 1st of July, as he had someone else who wished to go in on the enterprise with him. He states that, subsequently, in July, he tried to get the title passed prior to the 1st of August, and again the defendant refused, and in this he is corroborated by the broker, Barth, who states that he asked that the title be passed as soon as pos-

sible, notwithstanding the defects, and that the defendant refused to do it, and this occurred on the last day of July; that he then approached the attorney, Mr. Deubel, who drew this contract and represented the defendants, and told him of the condition of the title; that Mr. Deubel stated he had just received the report of the Fidelity, and was going away and couldn't give the matter attention, but would do so two or three days later. Again, Barth called on Mr. Deubel, and he states he was then informed, and in that he is corroborated by Mr. Deubel, that he learned from the Fidelity that a title policy would not issue.

"It appears that there was no one in attendance at the office of the place fixed for closing title on August 1st. Epstein didn't attend to pay the balance of the purchase price, and the defendants did not attend to deliver the deed.

"It appears that there was no deed ever prepared and executed and ready for delivery to Epstein. It does appear that Epstein had the money at that time to the extent of about $15,000 on deposit in various banks, and he had negotiated a loan of about $8,000 on his note, which a witness called by the complainant states he was able and willing to loan him to consummate the purchase.

"Somewhere about the 8th or 9th of August defendants concluded that they would not convey the title, and so informed their attorney; he in turn informed the complainant. They did not give any reason for the refusal to perform. By the terms of the contract, time was not made of the essence of the contract.

"After the making of this contract defendants, apparently, undertook the purchase of property in Union county, and intended to erect a building thereon. They made a payment of $100 and moved material, or caused it to be placed on the property, and they agreed to close the title to the Union property after they had closed with Epstein, and, because of Epstein's failure to close with them, they were unable to take title to the Union property.

"The bill was filed in October. It seems that between August and October Epstein had, not only applied to the

Fidelity, but applied to some other title company for a policy, of which company a man named Steiner was the attorney. That was in September or October, and that application, eventually, proved to be useless, because no policy would be issued. It appears, from what both parties claim, there is a defect, or several defects, in this title. How material they are, I do not know. I have not found it necessary to inquire, because Epstein's attitude to-day is that, no matter how important and material these defects are, he is ready and willing to take title to the property, with all defects thereon, and pay the balance in cash, according to the terms of the contract. That is the situation.

"The defendants invoke as a protection against this claim and as a defense, and it is about the only thing I see they have to invoke, but I do not see that it applies—the provision in the contract, to the effect that, if the title be found defective, that then they are to give back to Epstein his $550 deposit and pay him $150 additional to cover his costs and disbursements for searches.

"This provision of the contract I regard as being primarily for Epstein's benefit. It was for him to elect, having found the title defective, not to take title, and to request the return of his deposit, together with the $150 to be paid for his disbursements in examining the title. It was in a secondary sense for the protection of the defendants, in that it limited the amount of damages that Epstein could claim by reason of the defective title. In that sense, and in that secondary sense only, can I consider this provision of the contract to be available to the defendants. Epstein has elected to take the defective title, to pay the purchase price in full, and not to have his deposit returned to him. I think this was the condition that the parties contemplated when they made the contract and inserted the provision in question in it, and as Epstein does not consider the title sufficiently defective for him not to pay the twenty-three-thousand-dollar purchase price, and stands ready and willing to do that, I shall advise a decree for the performance of the contract. The settlement will have to be as of August 1st, 1923, unless counsel agree

differently. The property is rented and occupied by tenants, and there is an income therefrom, and, in addition, I presume there have been taxes and interest and other charges upon the property, which one of the parties has paid, and for which proper allowance must be made on the passing of title."

*Mr. Thomas Brown,* for the complainant.

*Mr. Hugo Woerner,* for the defendants.

PER CURIAM.

The decree appeal from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Foster.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS, JJ. 14.

*For reversal*—None.