FRANK ROSENSON, complainant-appellant,

*v.*

JACOB BOCHENEK, defendant-respondent.

[Argued February 10th, 1928.   Decided May 14th, 1928.]

1. As a general rule, equity will not require a vendee of land to accept a title whose validity is doubtful; but the doubt should be a substantial, and not a fanciful, one.

2. The fact that on a plat of building lots in the market for sale a strip of land is marked "Reserved" is no indication that such strip is either subject to dedication or to easement.

3. The fact that a brook runs through a strip marked "Reserved" on a filed map of building lots is not, without more, such a cloud on the title of land at the edges of the strip not reasonably required for the passage of the brook, as to lead a court of equity to deny specific performance of a contract to purchase the outer two inches of the strip, distant seven feet from the retaining wall of the brook.

4. Where time is not of the essence, and there has been no lawful rescission of a contract to purchase land, it is sufficient if the vendor is able to perform at the time of the decree.

5. What is a sufficient form of proof by subscribing witness of a deed of real estate made by an individual?

On appeal from a decree advised by Vice-Chancellor Church, whose opinion is reported in *101 N. J. Eq. 479.*

*Mr. Michael S. Precker,* for the appellant.

*Mr. Michael H. Feldman,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

The points at issue are stated in the opinion of the vice-chancellor, and are repeated here only so far as incidental to the discussion.

Rosenson *v.* Bockenek.    *102 N. J. Eq.*

A decree for specific performance was refused the vendor, because the vice-chancellor considered that the facts disclosed by the testimony showed a doubt as to the title to a "strip" which in his opinion would affect its marketability.

The "strip" in question is obviously the meandering one marked on the map "Reserved," and through which runs a small stream, which in time of flood would be enlarged.

We are not concerned with the whole strip, but only with some two inches of it adjoining on the southwest the lands described in the contract. The title to those lands is admittedly good, but the additional two inches were needed because of a slight mislocation of the building standing on them, which brought it over the line into the strip marked "Reserved." The "doubt" in the vice-chancellor's mind was whether because of the word "Reserved" on the map, or because of the physical existence of the brook, there might be some public or private easement in the "Reserved" strip, including the two inches, which would make trouble in the future for the vendee and his heirs and assigns; relying chiefly on *Doutney* v. *Lambie, 78 N. J. Eq. 277,* a decision of this court.

We do not think that any such doubt exists in this case, as was present in the case cited. The question there was as to the encroachment of the main front line of an apartment house over the street line of Park avenue, in New York City. As to such encroachment, a substantial question of fact was presented in that case.

As to the effect of the word "Reserved," we think no reasonable doubt exists. It appears only on the map; the evidence of title examiners shows that no mention of it has ever been made in any deed prior to complainant's title. As to indicating any dedication, its natural meaning is precisely the opposite, and this was so held by the late Vice-Chancellor Pitney in *Cleveland* v. *Bergen Building and Improvement Co., 55 Atl. Rep. 117, 119,* not officially reported. If it be taken to mean "reserved from sale," such reservation confers no rights on purchasers to object to such sale if the owner of the tract subsequently changes his mind.

Taking the brook as a physical fact, it is undisputed that it flows through the reserved strip, and that flowage should normally continue unless lawfully diverted. But it is likewise undisputed that the brook requires only part of the strip, that at the point in question it runs between retaining walls which have been in place for a number of years, and that the nearer retaining wall is seven feet away from the two-inch strip whose title is challenged. So that beyond a reasonable doubt, as we view the matter, the two-inch strip is free from any claim of servitude to an easement of drainage through the brook in favor of the public or neighboring owners.

This disposes of the principal questions raised in the case. The point that the complainant had not a good title at the time stipulated for delivery of deed ·is fully met by what was said in *Larkin* v. *Koether, 101 N. J. Eq. 176; 102 N. J. Eq. 329;* affirmed in this court in *6 N. J. Adv. R. 482; 140 Atl. Rep. 920.* In that case, as in this, time was not of the essence; and in that case, as in this, vendee received more land than he bargained for.

The point that the proof of a deed by a subscribing witness should state that the contents were made known to the grantor and that he thereupon acknowledged, &c., is without substance. In *Griffi. L. R. (1821*—at *p. 1210),* proof by a subscribing witness is set out in this form:

"New Jersey, ...... County, to wit: On this ...... day of .·..... anno· domini ..... personally appeared before me O. P., one of the justices of the supreme court of the state aforesaid [or other officer, describing his office] E. F. and being ˙by me duly sworn did depose that he saw A. B., the grantor in the within conveyance, sign, seal and deliver the same as his voluntary act and deed, and that the said deponent did subscribe his name as a witness thereto. Witness my hand. O. P."

Proofs have been taken in substantially this form from that day to this. In *Den* v. *Gustin, 12 N. J. Law 42,* the .proof read: "deposeth and saith that he was present and saw M. R., the within grantrix, execute and deliver the˙same voluntarily for the uses and purposes therein expressed." This was held

bad, not because of the form, but because the name of deponent did not appear on the deed as a subscribing witness. In *Coe* v. *New Jersey Midland Railway Co., 31 N. J. Eq. 105; 34 N. J. Eq. 266,* reversed in part on another point altogether irrelevant to the present inquiry, Chancellor Runyon considered, on pages 119 and 120 of *34 N. J. Eq.,* the proof of a corporate mortgage. The language of the proof is paraphrased on page 119; on page 120 he states the objection to be that it does not appear that the contents were made known to the grantor, "but," he says, "it is not necessary that that should appear in the proof of a deed or mortgage." On page 157 he holds, as was held in *Den* v. *Gustin, supra,* that the proof must be made by a subscribing witness, and, as to another instrument involved in the litigation, reiterates the ruling that it need not state that the contents were made known to the grantors; in this latter case, individuals. Even the form in Corbin's book, approved by the present chancellor in *Partridge* v. *Mechanics' Bank, 77 N. J. Eq. 208; affirmed* in *78 N. J. Eq. 297,* does not contain any clause about the communication of the contents, although Mr. Corbin, out of abundant caution, inserts a clause in the proof of a corporate instrument, to indicate that the officer was himself satisfied with the proof. But an examination of the records of any county will show that with respect to individual grantors, the form set forth in Griffith was the accredited form used uniformly for the best part of a century and never challenged as a form; and it would be out of place to intimate at this time that it is wanting in any legal particular. The cases of *Pinckney* v. *Burrage, 31 N. J. Law 21,* and *Riddle* v. *Keller, 61 N. J. Eq. 513,* cited for respondent, refer to the form of acknowledgments, which are controlled by a different clause of the statute. *Osborne* v. *Tunis, 25 N. J. Law 633,* referred to proof of a corporate deed, and the ground for holding it inadmissible was that the certificate of proof failed to indicate that the grantors named in the certificate were officers of the corporation or that they had signed it. The language of the form of proof, recited on page 659, corresponds to that in Griffith.

We conclude, that there was no substantial doubt about the validity of the title as finally tendered at the hearing, and therefore that the decree must be reversed with directions to award a decree of specific performance.

*For affirmance*—None.

