Complainants seek the specific performance of an agreement to convey real estate owned by the defendants Alcis E. Bates and Helen Bates (husband and wife). Said owners executed an option agreement with one William Veatch *Page 184 
Moore, who died shortly thereafter; Moore's widow, individually and as administratrix of his estate, by two separate instruments assigned the option to complainant. Defendants say (1) that the option was exercised too late, (2) that no tender of the purchase money was made, (3) that complainant's attempt to perform on his part was made at a time when he held an assignment of the option from the widow, individually only — not as administratrix, and (4) that they (defendants) are unable to perform by reason of the existence of a mortgage covering the lands in question (and other land), and by reason of the further fact that the lands are subject to the lien of two judgments and unpaid taxes.
The terms of the option agreement provide that the option must be exercised "on or before the expiration" of a certain lease made between defendants and the Standard Oil Company of New Jersey. That lease was dated January 11th, 1935, and was to run for one year, with the privilege on the part of the lessee to renew for four additional terms of one year each. In such case, if the lessee were to avail itself of the renewals provided for by the express terms of the lease, the lease could not be said to have ceased to exist at the end of the first year; on the contrary, the life of the lease would, in those circumstances, continue and extend for additional periods of one year each, at the election of the lessee, until the privilege of renewal were exhausted or forfeited. The lease was renewed for four consecutive terms and accordingly had not "expired" when complainant herein sought to exercise the option to purchase. The defendants' first point is therefore not sustained.
As to tender, Vice-Chancellor Foster said, in Meyer v. Reed,91 N.J. Eq. 237 (at p. 238): "If this [tender of purchase price] were a necessary prerequisite for a decree, it is sufficiently answered by the fact that defendant's own conduct, in refusing to answer complainant's request to meet him for the purpose of receiving the balance of the purchase-money and delivering his deed, prevented tender being made, and excused complainant from attempting to make tender; and, furthermore, tender is made by the pleadings, which *Page 185 
allege a readiness and willingness on the part of complainant to perform. But a formal tender is not always necessary to be shown in order to justify the court decreeing specific performance, particularly where defendant's own conduct prevented it being made. The question of tender being really one of costs.Schreiber v. Menningham, 73 N.J. Eq. 134; Safford v. Barber,74 N.J. Eq. 352; Roche v. Osborne, 69 Atl. Rep. 176." The situation in the present case is very similar to that discussed by Vice-Chancellor Foster above: complainant endeavored to facilitate performance and arranged a time therefor at the West Jersey Title Company in Camden; he attended on that occasion, ready and willing to pay the purchase price, but the defendants did not appear. And the complainant's pleadings tender a readiness and ability to perform. Therefore the second ground of defense fails.
On January 2d 1936, William Veatch Moore died at Marlton, New Jersey, intestate. Apparently the only asset of his estate was the option agreement herein; his widow, Esther K. Moore, and two children, Thomas K. Moore and Dorothy Jeanne Moore (the latter a minor), survived him. Mrs. Moore regarded her deceased husband's estate as insufficient in amount to require an application for letters of administration; accordingly, on March 5th, 1937, she assigned to complainant herein the option agreement which her husband held at the time of his death; the son, Thomas K. Moore, on the same day (March 5th, 1937) executed to complainant a release of any claim in and to said option; and Mrs. Moore, the widow, executed to complainant a bond to indemnify him against any possible claim of interest which the minor daughter might endeavor to assert upon coming of age. After complainant's title to the option was questioned at one of the hearings in this cause, the widow applied for letters of administration on the estate of the said William Veatch Moore, and on June 23d 1938, she was appointed administratrix; by assignment dated August 23d 1938, the administratrix transferred the option to complainant. The bill of complaint herein was supplemented to show the appointment of the *Page 186 
administratrix and the assignment by her in that capacity; and at a subsequent hearing herein proof was made in support of the bill as so supplemented. If any defect existed in complainant's title to the option before the appointment of the administratrix and the assignment by her (and I do not decide the point), the defect was subsequently cured. The supplement was filed before the lease to the Standard Oil Company had expired, and the exercise of the option to purchase was accordingly in time.
The last point, and the one most vigorously urged by defendants, is that they are unable to perform by reason of the existence of the mortgage and judgment liens on the land. The mortgage was made in 1920, in the amount of $3,500, covering a tract of about eighty-four acres, whereas the land in question covered by the option agreement comprises only four acres of that tract. The mortgage debt has been reduced to $2,640.03. Two judgments rendered against the defendants have, during the progress of this suit, been purchased by complainant. Since complainant tenders himself ready and willing to accept a conveyance subject to those liens (paragraph 3 of the supplement to the bill of complaint) I do not understand how the defendants can, in good faith, longer urge the existence of the liens as obstacles to performance.
In Coltinuk v. Hockstein, 95 N.J. Eq. 513 (affirmed,97 N.J. Eq. 371) at the bottom of page 515, Vice-Chancellor Church says: "I cannot see how this defendant can plead inability [to convey] when complainants are willing to take title subject to encumbrances, the amount of which can be easily ascertained and deducted from the agreed upon purchase price."
In Hughes v. Hadley, 96 N.J. Eq. 467, Vice-Chancellor Lewis refused specific performance with an abatement, to the complainant vendee, but for very obvious reasons. There, a trustee under a will contracted to sell two tracts of land for $115,000, of which amount $10,000 was to be paid in cash, and the balance ($105,000) in purchase-money mortgages of $50,000 and $55,000, respectively, on tracts One and Two. *Page 187 
It developed that the trustee could not convey good title to tract Two; the complainant was, however, put upon inquiry thereof before signing his contract. And the Vice-Chancellor was evidently satisfied that the parties had not mutually intended that the division of the purchase-money mortgages between tracts One and Two should have any indication of the value of the respective tracts, the trustee insisting that tract One was much more valuable than tract Two. The complainant was willing to perform the entire contract if defendant could give him good title to both tracts; otherwise he asked for a decree for specific performance as to tract One with abatement as to tract Two, which decree was denied. In the case sub judice, there is no question of the ability to convey title; no claim is made herein that defendants' title is not good; but the title is encumbered. Encumbrances and liens can be removed merely by payment of the amounts due thereon; whereas want of good title cannot be thus cured inasmuch as the owners of the outstanding title cannot be compelled to sell their interests. The two cases are readily distinguishable.
Vice-Chancellor Leaming, in Stein v. Francis, 91 N.J. Eq. 205
(at p. 206), said: "There is no doubt of the general power of this court to enforce specific performance of contracts to convey land and to decree that the purchase-money be applied to pay outstanding liens which are by the contract to be satisfied to clear the title, or, if necessary, require compensation to be made for any part of the land to which the vendor may be unable to make title, or to require indemnity from the vendor against outstanding liens or rights which cannot be satisfied."
 A decree will be advised in accordance herewith. *Page 188