FOUR-G CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. SEBASTIAN RUTA AND VIRGINIA RUTA, DEFENDANTS-RESPONDENTS.

Argued November 24 and December 2, 1957—
Decided January 20, 1958.

504

*Mr. Daniel Parke Lieblich* argued the cause for appellant.

*Mr. Ralph W. Chandless* argued the cause for respondents (*Messrs. Chandless, Weller & Kramer,* attorneys; *Mr. Ralph W. Chandless,* of counsel).

The opinion of the court was delivered by

WEINTRAUB, C. J. Plaintiff sued for specific performance of a contract for the sale of land. The parties met to close title but the closing failed when plaintiff claimed credits to which defendants would not agree. The trial court found the credits were not proper and that plaintiff was not entitled to specific performance upon payment in accordance with the court's view of the amount payable under the contract. The Appellate Division affirmed, 45 *N. J. Super.* 128 (1957), and we granted certification. 25 *N. J.* 44 (1957).

Defendant, Sebastian Ruta, owns a tract of land in Paramus. On April 12, 1955 he and his wife contracted with plaintiff's assignor to sell part for $17,500 and in the same instrument gave an option to purchase an additional tract for $22,500. Title was closed on the first parcel on June 28, 1955 and the option was at that time re-executed to permit separate recording.

The option provided for exercise by October 12, 1955 by registered mail, the date of closing to be "no later than thirty (30) days from and after the date of notification." The required notice was given on September 29, 1955 and the parties agreed on November 10, 1955 for closing.

The option provided it "is subject to a present lease and option to purchase granted by Ruta to Del-Ed, a corporation." The lease called for a monthly rent of $150 payable in advance on the first day of each month. It provided for payment of $900 to the landlords "as security for the performance of the terms and conditions herein contained," and "It is further understood that said deposit shall apply on the rent for the last six months of the term hereof."

The option was silent with respect to adjustments. Plaintiff claimed credit for the November rent, saying it was

ready to close in October, and the parties agreed to the figure of $100. Thereupon plaintiff's attorney prepared a closing statement showing also credits for $900, the deposit under the Del-Ed lease, and for $1,750, the sum payable by defendant to the broker, for which plaintiff produced an assignment to it. Defendant demurred and left the meeting.

## I.

 In the absence of an agreement providing otherwise, rents which accrue before title passes belong to the vendor and rents thereafter accruing belong to the purchaser, without apportionment in either case. *Moran v. Fifteenth Ward B. & L. Association,* 131 *N. J. Eq.* 361 *(Ch.* 1942) ; 92 *C. J. S. Vendor and Purchaser* § 288, *pp.* 159–162; 32 *Am. Jur., Landlord and Tenant,* § 456, *p.* 374. Neither party challenges this rule, and accordingly plaintiff concedes it could not insist upon a credit for any part of the November rent. As to that adjustment, it relies upon the understanding reached at the closing, but the understanding having been tentative for the purpose of a closing that failed, plaintiff's obligation in this suit must be measured by the option agreement. The trial court and Appellate Division so concluded, and we agree.

 But we have a different view with respect to the deposit of $900. Our cases hold that a deposit as security for performance of a lease constitutes a pledge between the immediate parties, and a grantee of the landlord is not chargeable with its return unless he expressly assumes liability or receives a credit for it against the purchase price. *Kaufman v. Williams,* 92 *N. J. L.* 182 *(E. & A.* 1918) ; *Schmidig v. O'Baggy,* 5 *N. J. Misc.* 554 *(Sup. Ct.* 1927) ; *Cummings v. Freehold Trust Co.,* 118 *N. J. L.* 193 *(E. & A.* 1937) ; *Partington v. Miller,* 122 *N. J. L.* 388 *(Sup. Ct.* 1939) ; 52 *C. J. S. Landlord and Tenant* § 473, *p.* 224. If the deposit here were merely as security, plaintiff could not have claimed a credit for it. But the lease expressly provides that the "deposit shall apply on the rent for the

last six months of the term." That provision is binding upon the purchaser. 52 *C. J. S. Landlord and Tenant* § 473, p. 225; *Walker v. 18th Street Holding Corporation,* 267 *App. Div.* 141, 44 *N. Y. S.* 2d 866 (*App. Div.* 1943); *Flatbush Savings Bank v. Levy,* 109 *N. Y. S.* 2d 247 (*Sup. Ct.* 1951); *cf. Boteler v. Leber,* 112 *N. J. Eq.* 441, 443 (*Ch.* 1933). Thus, plaintiff would be precluded from claiming rent for that period from the tenant.

The question therefore is whether plaintiff contracted to permit defendant to retain a portion of future rents. Nothing in the agreement suggests that it did. The provision that the option is subject to the lease does not militate against the purchaser's entitlement to all rents accruing after the transfer of title. 92 *C. J. S. Vendor and Purchaser* § 288, p. 161. Nor does the agreement contemplate that plaintiff will look to defendant at some future date for the rent for the six-month period. The normal expectation is that future rents will follow the reversion, and if a vendor has disabled himself from delivering title with the right to future rents unimpaired, the purchaser is entitled to an abatement or adjustment at closing. A vendor who seeks a departure from this result must expressly contract for it.

The circumstance that the deposit is a pledge between the immediate parties to the lease has no bearing upon the issue before us. The point is that a purchaser is entitled to all of the future rents, and to the extent to which the interest he purchases is burdened or limited by the vendor's prior transaction, he is entitled to a compensating adjustment.

For that reason it also is unimportant whether defendant in fact received the deposit or whether, as he testified, it was received by Ruta Sand & Gravel Co., a corporation, which held a contract with defendant to buy a tract including the parcel here involved and which joined with defendant as joint landlords in the lease to Del-Ed. The problem of pursuing the deposit in the hands of the corporation, if it is there, is defendant's problem, and not his purchaser's.

■ With respect to plaintiff's effort to set off the broker's commission, we agree with the Appellate Division that there can be no set-off in the absence of an agreement for it. A contract purchaser must perform the agreement as drawn; he may not buy up claims against the vendor and offer substituted performance. The circumstance that the broker's commission is payable in cash at closing may be a reason why the vendor ought not to object, but the decision is his. Nor does the fact that defendant consented to an identical credit at the June 1955 closing operate to change the contract, although, of course, that circumstance bears upon the question whether plaintiff is entitled to specific performance upon payment of what is due notwithstanding the unsoundness of its position at the time of closing. We proceed to that question.

## II.

■ It sometimes happens that parties to a contract of sale disagree as to its meaning. Where good faith attends the closing, the difficulty is talked out, resolved, compromised, or a method for solution agreed upon. The issue here is whether, when none of these expedients appears, a purchaser who desires the property must yield to the vendor's view or risk the loss of the property if a court should later adjudge his position to be legally incorrect. It seems to us that businessmen expect a rule of reasonableness, and such should be the rule of law. Accordingly, if plaintiff acted in good faith and with expedition, its right to specific performance should not be lost. Let us look at the facts.

Plaintiff's request for adjustment of the November rent was not unreasonable and, in fact, defendant agreed to it. With respect to the $900 deposit, plaintiff's position, in our view, was correct. As to the broker's commission, plaintiff was in error but defendant had acquiesced in an identical set-off a few months before and hence plaintiff's assumption that a like agreement would be made was not capricious. The testimony shows that defendant made no effort to dis-

cuss either credit or to state the basis of his objection, but rather upon seeing the proposed closing statement became furious and bolted from the meeting. His attorney reported to plaintiff that defendant wanted to "kill" the deal but prophesied that he would relent. He dissuaded plaintiff's president from a formal tender and said he would contact its counsel within a few days. Plaintiff's officer then saw defendant, who said he would close for all cash (the option provided for a purchase money mortgage for 75 per cent). On November 17, 1955 plaintiff sent a letter demanding performance and on December 2, 1955 the complaint was filed. We find no suggestion of bad faith on plaintiff's part; on the contrary, it seems plain to us that defendant seized upon the incident to escape from a contract he regretted and deemed the contract at an end because of the mentioned events at the closing.

Defendants contend plaintiff took the position that it would not perform if it should be determined it is not entitled to the credits. If factually this were so, relief would properly be denied. But we find nothing in the record to support defendants' claim. Surely no such position was taken at closing; Ruta left before the matter could even be discussed. Plaintiff's letter of November 17 demanded performance on the basis it thought correct. The complaint alleged generally defendants' refusal to perform without detailing the area of dispute and concluded, "Plaintiff now offers again to pay the purchase price." The complaint could have been more explicit by revealing the dispute and expressly seeking a determination, coupled with an offer to perform by such payment as the court should find to be due. But the allegation was broad enough to embrace that position. Defendants could have sought a clarification if in doubt, but were not interested because their position was that the failure to pay the full contract price at the closing ended the contract. The pretrial order clearly reveals plaintiff's position and additionally states one of the issues to be:

"2. If it be found that one or more of the proposed deductions were improper, is the plaintiff still entitled to specific performance upon the tender of the full contract price?"

In finding that plaintiff had determined to perform only on its own terms, the Appellate Division relied upon a portion of the testimony of plaintiff's president quoted in its opinion. We believe a fair reading of the entire testimony leads the other way. He testified both with respect to his version of the obligation and his willingness to abide by the obligation as the law might find it. As to the latter, he said "I was prepared to offer whatever was necessary. According to this [the closing statement] it was $2,875, and if any more were required I had it available." At any rate, plaintiff's position had clearly been stated in the pretrial order, and was pressed by its counsel in the final argument. We cannot find that anything said by the witness was effective to change the position which the litigant took and maintained through its counsel.

The option was exercised within time, and the time for closing under the resulting contract was not of the essence or made so by action of the parties. The suit was instituted forthwith. The general offer to perform in the complaint was sufficient under the circumstances. *Johnson v. Bates,* 128 *N. J. Eq.* 183 (*Ch.* 1940). Plaintiff acted in good faith, and there is no suggestion of prejudice to defendants. Plaintiff is entitled to specific performance upon paying the agreed cash, less the credit for the $900 deposit under the lease, and delivering the agreed bond and mortgage. See 49 *Am. Jur., Specific Performance,* § 41, *p.* 55; § 146, *p.* 170; *Willard v. Tayloe,* 8 *Wall.* 557, 75 *U. S.* 557, 19 *L. Ed.* 501 (1870); *Lewis v. McCreedy,* 378 *Ill.* 264, 38 *N. E. 2d* 170, 138 *A. L. R.* 198 (*Sup. Ct.* 1941); *L. C. S. Colliery, Inc. v. Globe Coal Co.,* 369 *Pa.* 1, 84 *A. 2d* 776 (*Sup. Ct.* 1951); *cf. Fountain v. Fountain,* 9 *N. J.* 558, 567 (1952); *Larkin v. Koether,* 101 *N. J. Eq.* 176 (*Ch.* 1927), affirmed 102 *N. J. Eq.* 329 (*E. & A.* 1928); *Rosenson v. Bochenek,* 102 *N. J. Eq.* 543 (*E. & A.* 1928); Annotation, 57 *A. L. R.* 1253, 1519 (1928).

The question remains whether, since the matter is now in litigation and the power of a court to order offsets is undoubted, it should be directed that the broker's commission be offset against the cash payable under the contract. We think it should not. The problem is not really one of set-off as it would be if litigants asserted monetary claims against each other. Rather, the question is whether a court should direct a departure from the contract which calls for cash (and a bond and mortgage) in exchange for a deed, and in effect remake the contract. The mischief which is likely if contracts for sale could be so dramatically altered by acquisition of claims against a vendor dictates that the court should enforce the agreement as it is, and leave plaintiff to separate pursuit of the assigned brokerage claim. We might add that although on the record there is no suggestion of any defense to the broker's claim, yet the issues as conceived for the trial did not necessarily invite a challenge to the merits of that claim and at the oral argument counsel for defendants expressed the belief that there is a basis for resistance. This circumstance buttresses the conclusion we have reached. We add that *Sargent v. Realty Traders*, 82 *N. J. Eq.* 331 (*E. & A.* 1913), is not in point. There complainant bought 20 lots at an auction sale and deposited $1,069. He built on four lots but was refused a deed, defendant repudiating its obligation as to all 20 lots. The court directed that the full deposit be applied on the purchase price for the four lots, for the reason that the moneys were complainant's and upon defendant's repudiation it held the funds for the benefit of complainant. No such equity exists here.

Lastly, plaintiff seeks a determination that the contract of defendants with Ruta Sand & Gravel Co. is no longer effective. The issue is not before us. Defendants did not plead inability to give title in accordance with their agreement and in fact at the closing they executed a warranty deed in which no reference was made to that contract. We must assume defendants can perform their obligation. The corporation is not a party defendant and hence no determina-

tion could bind it. Its possible interest crept into the case with respect to the controversy over the deposit on the Del-Ed lease. If upon remand defendants cannot perform because of that contract, the corporation may be brought in, and if its interest should be found to be superior to plaintiff's, defendants would then be liable for damages for breach of contract.

The judgment is reversed and the cause remanded to the Superior Court for further proceedings not inconsistent with this opinion.

HEHER, J. (dissenting in part). I concur in the reasoning and conclusion that plaintiff is entitled to specific performance upon the payment of the agreed price, in cash and by the stipulated security of bond and mortgage, less the credit for the $900 deposit under the lease; but I would give credit also for the broker's commission arising out of the same transaction.

We need not consider the rule in other and different circumstances. Here, the asserted obligation to the broker was not challenged below, nor was there any contention of its nonexistence, either in whole or in part, on the submission of the issue to this court. The respondents' brief merely states that the "option agreement is barren of any reference to real estate broker's commissions and obviously the plaintiff was without right to deduct these from the purchase price." This is the sum of the argument; the absence of express authority in the "option agreement" barred credit for the chose in action.

Unless there be a defense to the broker's claim for commission, then the principle for the avoidance of multiplicity of suits and circuity of action comes into play. This doctrine would seem to be applicable here, certainly so now that the right to specific performance is established, *Pom. Eq. Jur.,* *5th ed.,* § 243; *Story's Eq. Jur.,* 11th ed., § 64k; *Hampton v. Phipps,* 108 *U. S.* 260, 2 *S. Ct.* 622, 27 *L. Ed.* 719 (1883), the more so under the merger of law and equity functions in the Superior Court effected by the 1947 Constitution.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS and PROCTOR—6.

*For affirmance*—None.