101 N.J. Super. 577 (1968)
245 A.2d 61
CHAIM MELCER, PLAINTIFF-RESPONDENT,
v.
BENJAMIN ZUCK AND ROSE ZUCK, DEFENDANTS-APPELLANTS, AND R.G.B. CONSTRUCTION CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1968.
Decided July 5, 1968.
*579 Before Judges GAULKIN, LEWIS and KOLOVSKY.
Mr. Robert B. Silverman argued the cause for appellants (Mr. Julius Braun, attorney).
Mr. William G. Bassler argued the cause for respondent (Messrs. Parsons, Canzona, Blair & Warren, attorneys; Mr. Thomas Smith, Jr., of counsel).
The opinion of the court was delivered by KOLOVSKY, J.A.D.
As amended, the complaint filed herein by plaintiff, the purchaser named in a contract for sale of lands dated March 13, 1965, sought specific performance with an abatement by reason of the vendors' "inability *580 to provide a means of ingress and egress to" the premises described in the contract, or in the alternative, damages for breach of contract. Joined as parties defendants were the sellers, Mr. and Mrs. Zuck and R.G.B. Construction Co., Inc. (R.G.B.) to which the Zucks had conveyed the property on January 22, 1966, taking back as part of the purchase price a purchase money bond and mortgage of $20,000.
After a plenary trial the trial court ruled  and plaintiff does not challenge the ruling  that R.G.B. was a purchaser for value and as such entitled under R.S. 46:21-3 to hold the property free from any claim of plaintiff under his recorded contract of sale.
However, the trial court further ruled that defendants Zuck had breached their contract so that plaintiff was entitled to the alternative relief prayed, damages from Mr. and Mrs. Zuck for the "loss of the bargain, * * * the difference between $28,750, the contract price as abated, and $40,230, the sales price to R.G.B. Construction Co. Inc." (95 N.J. Super., at p. 260). Judgment was entered for the difference, $11,480, with interest from October 22, 1965. The Zucks appeal.
We reverse. We are satisfied from our review of the record that plaintiff did not establish a claim for relief either under the terms of the written contract of March 13, 1965 or by reason of what occurred thereafter.
We turn first to the contract of March 13, 1965, the basic instrument dealing with the rights and obligations of the parties, their "single and final written memorial," 30 Am. Jur.2d, Evidence, § 1016, p. 152. We are therefore not concerned with the interpretation of, or indeed the enforceability of, a prior "offer to purchase" on a printed form of "Monroe Bowne, real estate broker," signed by plaintiff and accepted by Zuck with a provision for a 10% brokerage commission. We note, however, since similar provisions were incorporated in the March 13 contract, that the "offer to purchase" provided that
*581 "Access from main road to property guaranteed. Seller guarantees not less than 295 acres. If survey shall disclose less than 295 acres, adjustment will be made at $100.00 per acre."
The formal contract of March 13, 1965 had been insisted on by Zuck. It was prepared by plaintiff's attorney. The description of the property was copied from a title report of Lawyers Title Insurance Company which Zuck had obtained prior to his acquisition of the property in 1953. That title report listed the same four exceptions (quoted at 95 N.J. Super., at p. 255) as were set forth in the title report dated April 12, 1965 later obtained by the purchaser's attorney from the same title company. As the trial court observed, the first three exceptions relating to heirs and dower rights were thereafter deleted on submission of affidavit proofs; the fourth, of particular significance to the present litigation, was not. It read:
"Rights of ingress and egress to a public road will not be insured."
The contract of March 13, 1965 provided for the sale by the Zucks to plaintiff of a 298.54-acre tract in Jackson Township on or before April 20, 1965 for $29,750  $2,975 by deposit, the balance $26,775 at title closing, with provision for a reduction in the price "at the rate of $100 per acre or fraction thereof" if an accurate survey disclosed that the premises contained less than 295 acres. The premises were described by metes and bounds and as lots 31 to 40, inclusive (with no indication of the map on which the property was designated by those lot numbers), subject, inter alia, to the following:
"Subject to the rights of the public, if any, in and to any public roads running in, through or over the premises hereinbefore described.

* * * * * * * *
Subject to rights, public and private, in roads, streets or avenues abutting the hereinabove described premises.
Subject to any and all grants to public utility companies pertaining to the hereinabove described premises."
*582 Pertinent to the issues presented in this litigation are the following additional provisions of the agreement:
"Sellers guarantee ingress and egress from the main road to the premises in question.

* * * * * * * *
In the event title to the above described premises is found to be unmarketable upon an examination thereof, the only obligation of the seller shall be the return of the deposit and all monies of the purchaser paid unto the seller; providing, however, that the seller will reimburse the purchaser for legal expenses incurred in the examination of the title to the hereinabove described premises which, however, shall not exceed the sum of $150.00; and upon receipt of the same by the purchaser, the rights and liabilities of the parties hereto, their respective heirs, executors, administrators or assigns, shall cease and terminate and this contract then to become null and void.
As an inducement to the seller to enter into this contract, the purchaser represents to the seller that the purchaser had made an inspection of said premises and is familiar with the condition thereof and that the seller had made no representation with respect thereto other than is specifically set forth in this contract."
At the outset it is essential to determine exactly what the contract obligated the seller to convey  what was the estate the purchaser had bargained for. The 298-acre tract does not front on any state, county or municipal road. The only reference to rights of ingress and egress thereto appears in the statement that the "sellers guarantee ingress and egress from the main road to the premises in question." However, it is clear that the contract did not contemplate that the purchaser was merely to have the benefit of the seller's warranty that ingress and egress would continue to be available. Cf. Jersey Estates Corp. v. Weintraub, 140 N.J. Eq. 216, 217 (Ch. 1947).
We agree with the trial court and with plaintiff's contention that the contract obligated defendants to convey not only the 298-acre tract but also "legally recognizable" right-of-way easements furnishing ingress and egress from the main road to the tract.
*583 At the trial Zuck offered proofs as to seven roads and rights of way allegedly available, some of which were being used for ingress to and egress from the 298-acre tract. After analyzing those proofs the trial court concluded that "the Zucks could not honor their guarantee of ingress and egress from a main road to their premises" (95 N.J. Super., at p. 258), this based on the court's ruling that "there was no proof that any easement had been established over any of the properties through which these ways went," either by prescription or dedication (95 N.J. Super., at pp. 257-258).
Although Zuck vigorously challenges the correctness of the trial court's analysis and findings with respect to the legal existence of the rights of way, we find it unnecessary to deal with that challenge for our disposition of the case. Assuming the correctness of the court's ruling, it constitutes a determination that the Zucks were unable to convey good or marketable title to the estate, which included the rights of way, they had agreed to convey. Lounsbery v. Locander, 25 N.J. Eq. 554, 556 (E. & A. 1874); 4 American Law of Property § 18.7, p. 673 (1952); Cleveland v. Bergen Bldg. & Imp. Co., 55 A. 117, 123 (N.J. Ch. 1903); Bassolino v. Iacovelli, 275 App. Div. 972, 90 N.Y.S.2d 526 (App. Div. 1949); see, also, Moran v. Borrello, 4 N.J. Misc. 344, 132 A. 510, 511 (Sup. Ct. 1926).
Unless plaintiff acquired additional rights by reason of what occurred after the execution of the contract of March 13, 1965, that determination of lack of marketable title brings into operation the contract provision limiting the sellers' obligation in the event title is found to be unmarketable to the return of the deposit and search fees not exceeding $150. It is settled that such a provision for limitation of liability is valid and enforceable. Bertrand v. Jones, 58 N.J. Super. 273, 287 (App. Div. 1959), certification denied 31 N.J. 553 (1960); Guaclides v. Kruse, 67 N.J. Super. 348, 364 (App. Div. 1961), certification denied 36 N.J. 32 (1961); 5 Williston, Contracts (3d ed. 1961), § 781A; 5 *584 Corbin, Contracts, § 1068 (1951); cf. 6 Powell, Real Property, ¶ 928, at p. 339 (1968).
We have not overlooked the statement in the trial court's opinion that "it is admitted that the title was not unmarketable because of the question as to ingress and egress." (95 N.J. Super., at p. 257). Altogether, apart from the fact that such an admission or stipulation as to what the law is is not binding upon the court, 50 Am. Jur., Stipulations § 5, p. 607; Bankers' Trust Co. of N.Y. v. Lobdell, 116 N.J. Eq. 363, 364 (Ch. 1934), the record does not support the statement. That was not the position taken by plaintiff in his pleadings, in the pretrial orders, or indeed on this appeal. We find nothing persuasive in the opinion to the contrary expressed at the trial by the attorney who represented plaintiff in the transaction. As far as defendants are concerned, there was no stipulation by them that marketability of title would not be involved if in fact defendant was obligated to convey good or marketable title to an easement of ingress and egress.
On that background, we next consider the sequence of events following the execution of the agreement of March 13. Plaintiff's attorney ordered and obtained a title report from Lawyers Title Insurance Company which, as was to be anticipated, repeated the statement in its prior report that "rights of ingress and egress to a public road will not be insured." Zuck had, of course, not agreed that his title would be such as a title company would insure. Cf. Love v. Fetters, 98 N.J.L. 784 (E. & A. 1923). Plaintiff's attorney made no effort otherwise to ascertain whether there were "legally recognizable" rights of ingress and egress. Instead, he, on plaintiff's behalf, insisted that plaintiff was entitled to an abatement in the purchase price, the abatement originally demanded being $6,000.
Defendant refused to grant any abatement. The impasse led to a final blow-up on May 25, 1965, with plaintiff's attorney on that day demanding of and receiving from the broker Bowne the $2,975 which had been deposited under the contract, telling the broker that the matter "would be going *585 probably into court and he wanted to hold the deposit during litigation." (Despite the recitals in the contract and Zuck's protests and demands, he had never received any part of the deposit moneys. It is clear from the proofs that in refusing to pay the deposit moneys to Zuck, the broker was acting pursuant to plaintiff's directions. The trial court's intimation to the contrary (95 N.J. Super., at p. 260) is not supported by the record.)
In view of the contract provision governing the rights of the parties in the event title was unmarketable, providing that in such event "the only obligation of the seller shall be the return of the deposit and all moneys of the purchaser paid unto the seller" plus search fees not exceeding $150, there was no justification for plaintiff's insistence on an abatement. If there were no legally recognizable rights of ingress and egress, so that title was in fact unmarketable, all that plaintiff was entitled to was a return of the deposit moneys  which he had already obtained through the cooperation of the broker  and search fees not exceeding $150.
So, too, the contract provision was a bar to specific performance with an abatement which was the relief sought in the complaints filed herein and in the first pretrial order entered on October 6, 1966. Epstein v. Mundweiler, 97 N.J. Eq. 375, 377 (E. & A. 1925); Guaclides v. Kruse, 67 N.J. Super. 348, 361, certification denied 36 N.J. 32 (1961), although of course it would not bar a vendee from seeking specific performance without an abatement. Epstein v. Mundweiler, supra.
In the original and amended complaints filed herein on February 23 and May 6, 1966, respectively, and in the first pretrial order of October 6, 1966, plaintiff's only contentions in addition to the reference to the terms of the contract of March 13, 1965 and the allegations with respect to the conveyance to R.G.B. were, as set forth in the pretrial order, that
*586 "* * * a date for closing was set for October 22, 1965 at the office of plaintiff's attorney at which time both the plaintiff and the defendants Zuck appeared. Defendants Zuck refused to execute a deed and pass title although plaintiff was ready, willing and able to complete the transaction. Plaintiff is still ready, willing and able to purchase the property. A provision of the contract guaranteed ingress and egress to the property which the defendants are unable to convey.

* * * * * * * *
Plaintiff seeks specific performance with an abatement of the purchase price due to defendants' inability to provide ingress and egress to the property or in the alternative damages,"
the reference to the relief sought being repeated in paragraph 5 of the pretrial order, which reads as follows:
"Plf demands specific performance of agreement or damages. Def Zuck claims that damages are limited by the terms of the contract to $150."
However, the relief granted by the trial court was in fact not damages in lieu of specific performance with an abatement; it was damages in lieu of specific performance of a new agreement, a modification agreement allegedly entered into in October 1965 under which Zuck's guarantee of ingress and egress was eliminated in consideration of his agreement to reduce the purchase price by $1,000.
That theory of the action first came into the case at the trial which began on February 9, 1967 during the testimony of plaintiff's first witness  the attorney who had represented him in the transaction. Because of the variance, the court declared a mistrial and ordered a new pretrial conference.
The second pretrial conference was held on March 7, 1967. Plaintiff's contentions as set forth in the pretrial order of that day were:
"Plaintiff alleges that on March 13, 1965, he and defendants, Zuck, entered into a contract for sale of certain real estate which is described in the complaint. Under the contract plaintiff paid to defendant a deposit in the amount of $2,975.00 and a closing date was scheduled for October 22, 1965 at the office of the plaintiff's *587 attorneys. On that date the plaintiff and his attorney, Mr. Zuck and possibly the real estate broker appeared.
The contract had originally provided that Benjamin Zuck agreed to provide a means of ingress and egress to the premises. Defendant, Zuck, on the closing date, was unable to supply this and at the closing plaintiff and defendant negotiated a reduction in the purchase price of $1,000.00 as an abatement for his inability to supply entry to the land."
The contentions continued with a charge that defendants refused to close because of plaintiff's insistence upon withholding out of the purchase price amounts necessary to satisfy open liens on the property, repeated the claim that R.G.B. took title with knowledge of plaintiff's rights, and concluded that
"Plaintiff seeks specific performance with an abatement of the purchase price due to defendant's inability to provide ingress and egress to the property or in the alternative damages."
However, at the trial which followed, beginning May 23, 1967, the proofs tendered by plaintiff were that the modification agreement and the agreement to close on October 22, 1965 had been arrived at in a conversation between one Flaum and Zuck several days before October 22, not, as stated in the second pretrial order, that it had been negotiated by plaintiff and defendant at the scheduled closing of October 22.
Zuck admitted that he had had conversations with Flaum but asserted that they related not to a modification of the Melcer agreement but to a new deal to sell the property to Flaum or his designated corporation for $38,000, with title to close on October 22, 1965 at the office of the attorneys who had represented Melcer and who also represented Flaum and his partner Fox.
Plaintiff did not call Flaum as a witness although he was available. That failure is of particular significance since the inference is irresistible from what does appear in the record that Flaum and Fox had some undisclosed interest *588 in Melcer's rights under the March 13, 1965 agreement. All the testimony offered by plaintiff in support of his version of the Zuck-Flaum conversations was hearsay.
It is clear that the alleged oral modification under which defendant ceased to be obligated to deliver marketable title insofar as it related to ingress and egress, in exchange for an abatement of $1,000 in the purchase price, was unenforceable because it was not in writing as required by the statute of frauds. Kohoot v. Gurbisz, 101 N.J. Eq. 757 (E. & A. 1927).
Further, altogether apart from the question of the application of the statute of frauds and even ignoring the testimony of defendant and his witnesses, we are satisfied that in the absence of any testimony from Flaum the person who allegedly entered into the modification agreement on plaintiff's behalf, the only inference fairly to be drawn from the testimony of plaintiff's witnesses is that the arrangement for the closing was not a binding contractual modification but rather an attempt to get the transaction and title closed. Since such tentative understanding for the purpose of closing failed, plaintiff's rights and defendants' obligations must be measured by the written contract of March 13. Cf. Four-G Corp. v. Ruta, 25 N.J. 503, 507 (1958).
As we have noted, plaintiff had already received the deposit moneys paid under the contract of March 13, 1965; his only other right arising from the court's ruling with respect to the non-existence of rights of ingress and egress was to recover search fees not in excess of $150. But he offered no proof as to the expenses incurred in the examination of title.
The judgment is reversed and the cause remanded to the Chancery Division with directions that judgment be entered in favor of defendants Benjamin Zuck and Rose Zuck.