Richard R. RONNE, Appellant,

v.

Mable B. RONNE, Appellee.

No. 3007.

Supreme Court of Alaska.

Sept. 16, 1977.

Robert H. Wagstaff, Wagstaff & Middleton, Anchorage, for appellant.

Timothy H. Stearns, Alaska Legal Clinic, Anchorage, for appellee.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR and BURKE, Justices.

## OPINION

BOOCHEVER, Chief Justice.

This is an appeal from a superior court order denying Richard Ronne's motion to compel Mable Ronne to convey property to him in compliance with his understanding of the terms of a divorce decree entered in the fall of 1975. The oral decision and written findings accompanying the divorce decree, in slightly different language, provided that Mr. Ronne had an option to purchase certain property from Mrs. Ronne for $15,000.00 within a three-month period. In June 1976, the trial court relying primarily on its earlier oral decision, held that Mr. Ronne had failed to exercise the option in a timely or proper manner.

In our view, the written findings are controlling in this case. Looking to those findings to determine the time and mode of exercising the option and to the amount of payment to assess whether Mr. Ronne has substantially performed, we reverse the decision below.

A hearing on Richard Ronne's uncontested complaint for divorce was held before Judge Sanders on October 2, 1975. The central issue at that hearing involved the respective rights of the parties in a 68-acre parcel of land which had been acquired during the marriage and was valued at $30,000.00. Because of the topography of the property and problems of access, the parties agreed that the land was not easily susceptible of equal division. Both Mr. Ronne, who was living on the property at the time of the hearing, and Mrs. Ronne sought complete ownership.

At the conclusion of the hearing, the court orally determined to grant the property jointly to the parties subject to a procedure whereby each, in turn, would be given an opportunity to buy out the other's share. A requirement of payment of $15,000.00

and arrangements for taxes, fees and costs were detailed. Mr. Ronne was permitted to live on the land and was granted the first option.

The court directed Mr. Ronne's attorney, Mr. Middleton, to prepare the final findings and decree. Paragraph 4 of these written findings reiterated the substance of the oral decision and included more specific provisions for sending notice of intention to purchase and for payment within a reasonable time. With some minor additions,[1] the written findings were signed by the court. A decree of divorce was granted, in accordance with the findings.

Throughout the divorce hearing and during the month of October 1975, Mrs. Ronne's attorney, Mr. William M. Erwin, had attempted to persuade her to accept terms rather than cash. Mr. Middleton understood from Mr. Erwin that Mrs. Ronne might prefer monthly payments. On November 17, 1975, Mr. Middleton sent a letter to Mr. Erwin advising him that Mr. Ronne desired to purchase Mrs. Ronne's interest in the property. He stated in the letter:

As I understand our conversation, you wish to check with Mrs. Ronne to determine what form of payment she would like for the property. Richard should be in some time this week, and perhaps we can settle the property issue once and for all and the form of payment at that time.

Neither Mr. Middleton nor Mr. Ronne received any further communication from Mr. Erwin or Mrs. Ronne, and no attempts were made to secure a loan during this period. On December 27, 1975, Mr. Middleton encountered Mr. Erwin on the street in Anchorage. At that time, Mr. Erwin indicated that Mrs. Ronne did not wish to have terms, but desired full payment in cash.

After hearing from Mr. Middleton, Mr. Ronne immediately sought to secure a loan. After some difficulty he obtained a loan on the 25th or 26th of January, 1976. On January 27, Mr. Middleton sent Mrs. Ronne a quitclaim deed. Payment of $14,828.50—

---

1. Pertinent portions of the oral decision and written findings, including the court's interline-ations, are set forth at Pages 1023 & 1024, *infra*.

$15,000.00 less closing costs and fees—was to be released immediately upon presentation of the signed deed to a bank official in Seward.

Mrs. Ronne refused to sign the deed. In early March, she sought to exercise her right to purchase the property. She placed money in escrow for this purpose, and sent notice of her intentions to Mr. Ronne.

On March 4, 1976, Mr. Ronne moved for an order requiring Mrs. Ronne to comply with Paragraph 4 of the written findings. His motion was heard by Judge Sanders on June 1, 1976. At that hearing, Mrs. Ronne's position was that tender of payment was neither timely nor properly exercised. An affidavit of Mr. Erwin entered in the record stated that Mr. Ronne had been specifically afforded a ten-day extension, and that Mr. Erwin had indicated a willingness to accept payment on January 11 or 12, 1976. Mr. Erwin testified, however, that he had neither granted a specific extension nor placed any time limit on payment. Although he had understood the decree to require payment within the three-month period, he indicated that he had insisted that Mrs. Ronne permit additional time for payment because of the lateness of the demand for cash and had figured that payment by the 10th was reasonable. Mr. Erwin further stated that he had never demanded payment.[2]

On June 9, 1976, the trial court issued detailed Findings of Fact and Conclusions of Law. Denying Mr. Ronne's motion, it concluded, in essence, that the option required payment of cash before the end of December,[3] and that, in any event, tender of $14,828.50 did not comply with the terms of the option.[4] This appeal followed.

Since Mr. Ronne's argument on appeal is based on the language of the written findings while Mrs. Ronne relies primarily on the wording of the oral decision, we must initially consider the respective weights to be accorded these two aspects of the original judgment.

In a case involving a summary judgment a majority of this court stated that where there was a variance between the court's oral ruling and written findings prepared by the prevailing party, the terms of the oral ruling were controlling.[5] Where, however, written and oral findings are not inconsistent, but the latter merely qualifies the former, it is clear that:

> The record should be taken into consideration in determining the intent, scope and effect of an order. Thus, the transcript should properly be considered in interpreting the scope of a written order based thereon  . . . .

**2.** After sometime early in January 1976, Mr. Erwin no longer represented Mrs. Ronne and had no further contact with Mr. Middleton.

**3.** December 30 was the date specified in both the original oral decision and the written findings. Later references are made to December 31. As tender of the purchase price was not until January 27, the confusion is not material here, and for purposes of consistency, the date of December 30 will be used hereafter in this discussion.

**4.** Specifically, the trial court found that:
(1) The oral decision of November required that Mr. Ronne pay net cash before "December 31." The words "reasonable time" were used only in the written findings of fact.
(2) No tender of net cash was made until January 27.
(3) On January 9, Mr. Erwin informed Mr. Middleton that time had elapsed for payment.
(4) Mr. Erwin gave an extension until January 15 for the exercise of the option, but Mr. Ronne did not exercise the option within that period of time.
(5) The terms of the option were not met in regard to the amount of money to be paid.
(6) The offer of cash approximately 30 days after the deadline for "purchase" was an "unreasonable time and a time not contemplated by the parties at the time the decision was entered in this case." The tender was also an unreasonable length of time from the time of notice, a reasonable time being on or before December 31.

**5.** *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 456 (Alaska 1974) (Boochever, J. and Rabinowitz, C. J., concurring on the facts there involved, but expressly disagreeing that oral findings should control over written rulings generally). *See City of Anchorage v. Steward*, 374 P.2d 737, 739 (Alaska 1962). A majority of the court now believes that, generally, written findings should control.

*Johnson v. Johnson*, 544 P.2d 65, 69 n.5 (Alaska 1975).

With respect to the time and manner of exercising the option, we note that neither the written findings nor the oral decision are clear and precise. The oral decision provides:

> . . . the court is going to grant the property jointly to the 2 parties. . . [T]he husband shall be responsible for the taxes and the cost and assessments until . . . the end of December the 30th, 1975, he has the option to purchase the property by paying the wife net, . . [H]e has . . . approximately 3 months to purchase it, . . . .

Under this language, it is uncertain whether tender of payment must occur within the three-month period or whether an indication within this period that Mr. Ronne intends to purchase the property is sufficient to preserve his rights.

■ The written findings follow the outlines of the oral decision regarding the three-month option period but include somewhat more specific instructions for the manner of exercising the option and for payment. Paragraph 4 states in part:

> Until December 30, 1975, the plaintiff may have sole ownership of the property by sending the defendant notice that he intends to purchase such property for the sum of FIFTEEN THOUSAND DOLLARS ($15,000) net, (cash) less attorney's fees for the purchase, to be delivered to her in a reasonable time or on such other conditions as they may agree upon. If the plaintiff does not exercise such option, then the defendant may from January 1, 1976 until March 30, 1976 purchase the property from the plaintiff for the sum of FIFTEEN THOUSAND DOLLARS ($15,000) net (cash) less such attorney's fees as are required for the purchase by sending to him a notice of intent

to purchase with payment to be made within a reasonable time.[6]

The syntax and punctuation of Paragraph 4 appear to delineate two distinct obligations: (1) the duty to give notice of intention to purchase and (2) the duty to make payment. Only the obligation to give notice was required to be performed by the end of December. Payment was to be made "in a reasonable time."

Our reading of the language of Paragraph 4 follows what Professor Corbin terms the "favored" interpretation of option contracts for the sale of land and is supported in the case law. Like one who has executed an option, Mrs. Ronne, under the terms of the decree, is bound to sell and convey for a stipulated price. Acceptance of the option rests solely in Mr. Ronne's discretion.[7] Professor Corbin states:

> In most cases, the courts are likely to interpret the agreement in such a way that the contract will be held to be bilateral after a proper notice of acceptance. *In such cases, the notice of acceptance is operative without any tender of the price and this is true even though such tender shall be a condition of the duty to execute a conveyance.* (emphasis added)

Under our analysis of the language of Paragraph 4, we fail to perceive any inconsistency between the oral decision and the written findings and therefore regard the written findings as controlling. Although the written findings were drafted by counsel for Mr. Ronne, counsel for Mrs. Ronne offered assistance in preparing the findings, stating, "We're close enough so that it's not going to be that much of a difficulty." The written findings were presumably served on counsel who could have objected to any perceived ambiguity or variance from the oral decision. Likewise, the written findings were approved by the judge, who obvi-

---

**6.** Words in parentheses were added by the court and initialled by it and Mr. Middleton.

**7.** 1A Corbin on Contracts, Option Contracts § 264 at 514. *See In Kottler v. Martin*, 241 N.C. 369, 85 S.E.2d 314 (1955). In *Kottler*, the court considered an option contract with language similar to that involved here. The option

provided that the lessee may elect "*to purchase the property at the sum of $6,700*" (emphasis added). The court held that the option was properly exercised by giving notice and that the actual payment was merely required to be made concurrent with the conveyance.

ously performed his duties with some care as indicated by his interlineations.

■ We turn next to the facts of the case to determine whether Mr. Ronne has timely exercised the option. Since notice of intention to purchase was given prior to the December 30 deadline, the sole issue is whether tender of payment on January 27 occurred within a reasonable time. This question must be analyzed in light of all the circumstances.[8] Both the reasons for the delay and the prejudice resulting to Mrs. Ronne are relevant factors for our consideration.

The record in this case shows that throughout the period of the divorce, Mr. Erwin had been attempting to convince Mrs. Ronne to accept terms and that Mr. Middleton was aware of this fact. Moreover, despite the trial court's finding, it is uncontested that after receiving the November 17 letter of intent, Mr. Erwin made no attempts to contact Mr. Middleton. It was only on December 27 at an apparently chance encounter that Mr. Middleton was informed that cash was required. Regardless of whether he, in fact, granted a formal extension, Mr. Erwin considered that, in view of this situation, payment by approximately January 10 would not have been unreasonable. Actual tender was made 17 days thereafter. Neither Mr. Erwin nor Mrs. Ronne had ever demanded payment on a specific date.

Mrs. Ronne suggests that the delay in tendering cash was prejudicial in that: (1) by the terms of the decree, rent and tax liability required readjustment at the end of the three-month period, and failure to properly exercise the option at the stipulated time left her uncertain as to her own responsibilities; and (2) her ability to purchase the property was impaired, leaving only two months before a compulsory sale, in contrast to Mr. Ronne's four.

We do not find these arguments persuasive. Under our construction of the written findings, Mr. Ronne's letter of intention to purchase effectively extinguished Mrs. Ronne's right to purchase the land and put her on notice that she would have no further responsibilities in connection with it. If failure to make immediate tender occasioned any uncertainty, further assurances might have been demanded. Mr. Ronne continued to live on the property after December 30, and nothing in the record suggests that rent was ever questioned or that Mr. Ronne avoided tax responsibility during this period. We are not here confronted with a situation in which a total failure to pay might require some readjustment of Mrs. Ronne's option period. We hold that payment was made within a reasonable time.[9]

The final issue in this appeal involves a problem of substantial performance. The written findings stated that Mr. Ronne had the option to purchase the property for $15,000.00 net (cash) "less such attorney's fees as are required for the purchase. . . ." The trial court found that the proffered sum—representing the purchase price less closing costs and fees—did not comply with the terms of the option.

In *Nordin Construction Co. v. City of Nome,* 489 P.2d 455, 459 (Alaska 1971), we quoted Professor Corbin, stating:

> It is not easy to lay down rules for determining what amounts to 'substantial performance' . . . . It is always a question of fact, a matter of degree, a question that must be determined relatively to all the other complex factors . . .

We explained that extent of performance and willfulness of default are two factors of obvious relevance.

■ In this case, the amount tendered is at most only $171.50 less than the stated

---

**8.** *See* 3A Corbin on Contracts § 716 at 365 (1960). *See also* 5A Corbin on Contracts § 1177 at 314 (1960).

**9.** Since the trial court did not interpret the decree as authorizing payment within a reason-

able time, it never passed on this issue. Normally we would remand for such a finding, but under the circumstances of this case we would be compelled to hold that a finding to the contrary would be erroneous.

purchase price.[10] There is no contention that either in drafting the written findings or in paying the lessor sum, Mr. Ronne acted in bad faith.[11] In view of these facts, we find that Mr. Ronne did not lose his right to purchase the land by failure to tender the full $15,000.00 and that the trial court erred in not finding that there was substantial performance.

Since we conclude that Mr. Ronne has timely and properly exercised the option to purchase and that his payment constitutes substantial performance, we reverse the de-cision below. The case is remanded to the superior court for the purpose of entering an order compelling Mrs. Ronne to transfer the land to Mr. Ronne.[12]

REVERSED.

**10.** The record does not disclose how much of this amount is attributable to closing costs and how much to attorney's fees. To the extent that the deduction represents attorney's fees, it is, under the written findings, properly subtracted from the purchase price.

**11.** *See Four–G Corporation v. Ruta,* 25 N.J. 503, 138 A.2d 18, 22 (1958):

It sometimes happens that parties to a contract of sale disagree as to its meaning. Where good faith attends the closing the difficulty is talked out, resolved, compromised, or a method of solution agreed upon. The issue here is whether, when none of these expedients appears, a purchaser who desired the property must yield to the vendor's view or risk the loss of the property if a Court should later adjudge his position to be legally incorrect. It seems to us that businessmen accept a rule of reasonableness, and such should be the rule of law. Accordingly, if plaintiff acted in good faith and with expedition, its right to specific performance should not be lost.

**12.** If Mr. Ronne has not been paying rent since the tender of the purchase price, he should be ordered to pay the amount of such rentals. He also should be required to pay the full $15,-000.00 purchase price as agreed to in oral argument.